James BOND, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–8710–CR–948.

Supreme Court of Indiana.

Feb. 6, 1989.

Sally A. Ankony, Sweeney, Dabagia, Donoghue & Thorne, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of the crime of Rape, a Class B felony, for which he received a sentence of twelve (12) years.

The facts are: Appellant resided in South Bend with his girlfriend Yvonne Ivy and their 10-year-old son. Ivy is the mother of three older children who do not live in the home nor is appellant their father. The youngest of these three children, the victim in this case, was sixteen years of age at the time of the offense. The victim resided at a different address in South Bend with her 20-year-old sister and her sister's boyfriend. Until a year before the incident giving rise to this case, the victim had resided with her mother and appellant.

On December 3, 1986, the victim got off work and took a bus to her mother's home. No one was home, but the door was unlocked, so she entered. Shortly thereafter, appellant came home. The victim asked him to take her to her home. They left in his car and he dropped her off at a Seven-Eleven Super Market, then picked up the victim's mother at work and drove her home. He then returned to the Seven-Eleven Super Market to pick up the victim.

There he also met his friend Lorenzo Rogers. The two of them, together with the victim, drove to a liquor store where the men purchased a half-pint of whiskey which they consumed as they sat in the car. The victim did not participate in the drinking. When the liquor had been consumed, Rogers left, and appellant and the victim left in appellant's car. The victim told appellant she needed to be home by 9:00. He replied that he would have her home by 9:30.

Appellant drove out into the country. The victim stated she was not afraid when she started riding with appellant, but after they got out into the country, she became frightened when appellant began talking about his sexual prowess. When appellant stopped the car on a country road, the victim testified she tried to get out of the car, but appellant grabbed her and pulled her back into the car, made a fist, and said, "I'll bust your head." The victim stated that appellant placed her on the front seat, unbuttoned her clothing, and removed her lower garment from her left leg. During this time, she tried to dissuade appellant from raping her by telling him she was infected with gonorrhea. However, she testified, he proceeded to rape her. She said she started crying, then he raped her a second time.

Appellant denied having the second sexual intercourse with the victim and claims the sexual intercourse was consensual. Appellant then drove the victim to a place near her sister's home and released her. She reported the incident to her sister and her sister's boyfriend. They took her to

the South Bend Police Station and then to the St. Joseph Hospital, where the victim told the police and the nurses essentially the same story as above recited.

■ Appellant claims the evidence is insufficient to sustain the verdict of the jury. Appellant concedes this Court will not weigh the evidence or determine the credibility of the witnesses but argues that there is insufficient evidence that he used force to accomplish the sexual intercourse. He claims the only evidence of force was his statement, "I'll bust your head," and that the victim testified she did not hit him in attempting to repel his advances.

In a similar situation, this Court stated:

"A victim must resist to a degree which would indicate that the act is against her will, but physical resistance is not required if the victim is in fear of bodily harm. The degree of resistance required is dependent upon the surrounding circumstances and it is for the trier of fact to determine if the victim acted reasonably in resisting the rape." *Gilliam v. State* (1987), Ind., 509 N.E.2d 815, 817.

The jury was entitled to take into consideration that appellant was a 44–year–old man making sexual advances to the 16–year–old daughter of his girlfriend. It was for the jury to listen to the testimony of the victim and of appellant and to make the determination as to whether the victim had resisted sufficiently to support her accusation of rape. This Court will not invade the province of the jury in that regard. *Id.*

Appellant also claims the victim's story is not credible because the evidence shows a short time prior to the incident he had been injured in a motorcycle accident which had caused temporary partial impairment of his arms and legs. He also had been the victim of a gunshot wound requiring twenty-five to thirty staples to be placed in his abdomen to close the incision necessary for exploratory surgery. He claims that at the time of the alleged incident he still had those staples in his abdomen and that he was in no condition to force anybody to do anything. Again this matter is for the jury to determine in weighing all of the evidence before them. *Id.*

The evidence in this case is sufficient to support the verdict of the jury.

■ Appellant claims that he was denied a fair trial in that he is black yet he was adjudged by an all-white jury. He claims that while St. Joseph County has a slightly more than nine percent black population there were, however, only two blacks on the forty-person panel that was assembled for the *voir dire* of the jury. In the case of *Duren v. Missouri* (1979), 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579, the Supreme Court of the United States established three requirements for a constitutional challenge to jury selection based on a "fair-cross-section" violation. There the Court held:

"[T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587.

Appellant obviously meets the first criterion. However, there is nothing in this record to indicate that any unfair method was used in selecting prospective jurors. The fact that the forty-person panel only included two blacks does not in and of itself indicate any pattern of exclusion. There is no evidence here which would demonstrate any purposeful exclusion of blacks or any other group from jury service. The burden to make such a showing rests with appellant. *Averhart v. State* (1984), Ind., 470 N.E.2d 666. We find nothing in this record to support appellant's allegation of unfair or prejudicial selection.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.