**Jason D. WILDER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0307–CR–284.

Court of Appeals of Indiana.

Aug. 18, 2004.

Transfer Denied Nov. 10, 2004.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jason Wilder appeals the denial of his motion to correct error. Wilder raises one issue on appeal, which we restate as whether his rights under the Sixth[1] and Fourteenth[2] Amendments to the United States Constitution were violated because his jury venire included only one African-American.

We affirm in part and vacate in part.

---

1. U.S. Const. amend. VI:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

2. U.S. Const. amend. XIV § 1:

   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## FACTS AND PROCEDURAL HISTORY

Wilder was invited to join a plan to steal crack cocaine from Ronald Robinson ("Robinson"). The other participants were Shawndel Gordon ("Shawndel"), Ronald Smith ("Smith") and Tecory Gordon ("Cory"). The idea came about when Shawndel learned from his uncle, Robert Porter ("Porter"), that Robinson, Porter's co-worker, had a large quantity of crack cocaine for sale. Shawndel formed a plan to invite Robinson to his home to sell the crack cocaine, to stage a robbery with Wilder, Smith and Cory, and to steal the cocaine from Robinson. During the robbery, Wilder shot and killed Robinson.

On April 27, 2001, a jury found Wilder guilty of murder, felony murder, and attempted robbery. On July 5, 2001, Wilder filed a motion to correct error, claiming the trial court erred in denying his objection to the jury panel based on the racial makeup of the panel and procedures used to empanel juries.

The trial court held a hearing on the motion on March 26, 2003. At the hearing Wilder argued that anecdotal evidence indicated the percentage of African–Americans on jury panels in St. Joseph County was consistently lower than their proportion in the population. Wilder asserted that, despite anecdotal evidence of under-representation of African–Americans in jury pools, the county continued to use voter registration rolls to select potential jurors. The trial court denied Wilder's motion to correct error.

On appeal, Wilder asserts the State failed to carry its burden of proving any legitimate state interest in selecting prospective jurors by methods that result in the consistent under-representation of African–Americans.

## DISCUSSION AND DECISION

The United States Supreme Court has long held that the selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The jury selection process should operate to reflect a reasonable cross-section of the community from which it is drawn. *Moore v. State*, 427 N.E.2d 1135, 1137 (Ind.Ct.App.1981). We have, however, declined to require that jury panels be a microcosm of a county or a court district. *Peoples v. State*, 649 N.E.2d 638, 639 (Ind. Ct.App.1995). The jury selection statutes are designed to remove any suspicion of favoritism or advantage in the jury selection process. *Id.* at 640. Jurors need not be mathematically proportioned to the character of the community, and there is no requirement that any particular class be represented on every jury. *Daniels v. State*, 274 Ind. 29, 408 N.E.2d 1244, 1247 (1980). The main requirement is the selection should not be arbitrary. *Peoples*, 649 N.E.2d at 640.

The burden of demonstrating purposeful discrimination is on the defendant. In order to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show: 1) that the group alleged to be excluded is a "distinctive" group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 362, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Once the defendant has made a *prima facie* showing that he has been de-

nied his right to have a jury drawn from a fair cross-section of the community, the State may still justify the selection process by showing that attainment of a fair cross-section is incompatible with a significant state interest. *Id* at 370, 99 S.Ct. 664. The burden, however, is on the State to demonstrate this. *Id.*

The method by which jury pools are selected in Indiana is governed by statute. Ind.Code § 33–4–5–2(c) [3] allows jury commissioners to use a computerized jury selection system, but requires that the system employed be fair and not violate the rights of people with respect to the impartial and random selection of prospective jurors.

■■■ In *Azania v. State,* 778 N.E.2d 1253, 1260 (Ind.2002), our supreme court discussed two tests under the Sixth Amendment to determine if a jury pool adequately represents the community. The "Absolute Disparity Test" measures the difference between the percentage of the distinctive group eligible for jury duty and the percentage in the pool. *Id.* at 1260. The second test is the "Comparative Disparity Test," which is calculated by dividing the absolute disparity by the percentage of the group eligible for jury duty. *Id.*

■■■ Wilder claims that of the 51 persons in his venire, only one was an African–American. Based on 2000 census information, Wilder determined the African–American population in St. Joseph County is approximately 10%. Therefore, Wilder asserts, there is an 8% actual disparity and an 80% comparative disparity between the percentage of the distinct group of African–Americans aged eighteen years or older who are eligible for jury duty in St. Joseph County and the percentage of African–Americans in his venire.

Wilder contends African–Americans are less likely to register to vote than whites and therefore are less likely to be selected. In *Taylor v. State,* 260 Ind. 264, 271, 295 N.E.2d 600, 605 (Ind.1973), *cert. denied* 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250 (1973), our supreme court held the practice of selecting jurors from registered voters was permissible absent a showing of a deliberate attempt to exclude certain groups. *See also Lamar v. State,* 266 Ind. 689, 696, 366 N.E.2d 652, 656 (Ind.1977) (rejecting argument that jury pool was unconstitutional because a large number of people of the Amish faith do not vote and are excluded from jury service).

Wilder further asserts the system used in St. Joseph County compounds the discriminatory impact because the venire is not randomly selected from the entire registered voter database. Rather, prospective jurors are placed in one of six subsets based on their zip codes. There are nineteen U.S. Postal Service zip codes in St. Joseph County.[4] St. Joseph County combines and consolidates the nineteen actual zip codes into six groupings. A computer

---

3. Ind.Code § 33–4–5–2(c):

Subject to appropriations made by the county fiscal body, the jury commissioners may utilize a computerized jury selection system. However, the system utilized for the selection system must be fair and may not violate the rights of persons with respect to the impartial and random selection of prospective jurors. The jurors selected under the computerized jury selection system must be eligible for selection under this chapter. The commissioners shall deliver

the names of the individuals selected to the clerk of the circuit court. The commissioners shall observe their oath in all activities taken under this subsection.

4. A large percentage of the total African–American population in the county resides in six of the nineteen zip code areas. Nine of the remaining thirteen zip code areas have large white majorities, and four have no African–Americans at all.

program then selects different percentages from each of the combined groups to fill the venire. The reason different percentages are selected from each combined group is not clear.

Wilder argues if rural and suburban zip code areas with predominantly white populations are picked at a ratio higher than their populations are to the population in the whole county then African–Americans will be under-represented in the resulting venire. While Wilder has identified a potential concern, he has provided no evidence to support his premise that predominantly white zip codes are picked in higher proportions. Without evidence about how the nineteen zip codes are combined into six groups, we are unable to conclude that selecting different percentages from the six combined groups systematically under-represents African–Americans.

In attempt to demonstrate a pattern of under-representation of African–Americans, Wilder points to four decisions from St. Joseph County where defendants raised a "fair cross-section" claim. In *Wilder v. State*, 498 N.E.2d 1295, 1296 (Ind. Ct.App.1986), two out of nineteen members of the venire were African–Americans.[5] In *Bond v. State*, 533 N.E.2d 589, 591 (Ind.1989), two African–Americans were on the forty-person panel. In *Smith v. State*, 658 N.E.2d 910, 914 (Ind.Ct.App. 1995), *trans. denied*, of forty-nine prospective jurors one was African–American. Finally, in *Prince v. Parke*, 907 F.Supp. 1243, 1248 (N.D.Ind.1995), one out of fifty possible jurors was African–American. In all of these cases the courts rejected the claim of a systematic exclusion of African–

Americans. Furthermore, Wilder has not demonstrated these cases accurately represent the typical jury venires in St. Joseph County.

Although African–Americans may have been under-represented in the jury pool in this particular case, Wilder has provided no evidence to suggest jury pools in St. Joseph County systematically exclude African–Americans. Our supreme court has repeatedly held that computerized selection of potential jurors from voter registration lists alone, without additional use of tax lists, is sufficient to satisfy the statutory and constitutional requirements. *Dye v. State*, 717 N.E.2d 5, 19 (Ind.1999), *reh'g denied, cert. denied* 531 U.S. 957, 121 S.Ct. 379, 148 L.Ed.2d 292 (2000). Wilder suggests the zip code system may be abused, resulting in an unfair drawing of African–Americans; however, he fails to show this in fact happened. Therefore Wilder has failed to carry his burden of proving systematic exclusion to satisfy the third part of the test set out in *Duren*.[6]

■■■■ While we find no error in the selection of Wilder's jury venire, we must address the trial court's merger of Wilder's felony murder conviction with his murder conviction. Wilder has not presented this issue; however, it is well established that a violation of double jeopardy protections is fundamental error and must be addressed upon appeal *sua sponte*. *Woods v. State*, 768 N.E.2d 1024, 1028 (Ind.Ct.App.2002). At the sentencing hearing the trial court considered argument of counsel with respect to the issue of double jeopardy and stated: "[the court] now finds the offense of Felony Murder as

**5.** We note that two out of nineteen is slightly more than 10%. According to Wilder's argument, African–Americans make up 10% of the population in St. Joseph County. Ironically, *Wilder* suggests the jury selection procedures in St. Joseph County do not systematically exclude African–Americans.

**6.** Wilder claims the State has not demonstrated a significant state interest in its jury selection method. However, as Wilder has not made the initial *prima facie* showing that he has been denied his right to have a jury of a cross-section of his peers, the State needs prove no such interest.

charged in Count II is merged with and becomes a part of the Murder charged in Count I." (Appellant's App. at 138.) The trial court then went on to sentence Wilder on the Count I murder and Count III attempted robbery.

A double jeopardy violation occurs when judgment of convictions are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *Jones v. State*, 807 N.E.2d 58, 67 (Ind.Ct.App.2004). In appropriate circumstances, a defendant may be convicted and sentenced for both intentional murder and the felony that serves as the predicate for a felony murder charge so long as the felony murder conviction is vacated. *Henson v. State*, 707 N.E.2d 792, 794 (Ind. 1999).

The felony murder conviction should have been vacated instead of merged.[7] *See also Abron v. State*, 591 N.E.2d 634, 637 (Ind.Ct.App.1992) (conviction even without a sentence is in violation of double jeopardy and must be vacated). Accordingly, although we affirm the murder and the attempted robbery convictions, we instruct the trial court to vacate the felony murder conviction.

For the forgoing reasons, we affirm in part and vacate in part.

SULLIVAN, J., and VAIDIK, J., concur.

---

7. It is not entirely clear from the record whether a judgment of conviction was entered on the felony murder verdict. If no such judgment of conviction was entered, "merger" of the two counts would not be necessary. *See Carter v. State*, 750 N.E.2d 778, 781 (Ind.2001) ("a jury verdict on which the court did not enter judgment ... is unproblematic ... [t]here is no particular reason to order a trial court to vacate the jury 'conviction' on, say, counts one or two where the trial court entered a judgment only on count three.") To the extent a judgment of conviction on Wilder's felony murder verdict is present, it is hereby vacated.