Frederick A. LAUX, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 27S00–0303–CR–104.

Supreme Court of Indiana.

Feb. 2, 2005.

C. Robert Rittman, Marion, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Office of Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Frederick A. Laux guilty of murder, felony murder and burglary resulting in bodily injury. The court sentenced him to life without parole, plus twenty additional years for the burglary count. On appeal, Laux makes one claim warranting relief: that a no-contact order was improperly incorporated into his sentence. We otherwise affirm.

## Facts and Procedural History

In June 2001, Heidi Laux separated from her husband Fred Laux, moved with her two daughters from Anderson to Marion, and began divorce proceedings. Soon thereafter, Laux also relocated to Marion, and moved into a house situated less than one mile from Heidi. On November 19, 2001, the divorce became final. On the following Valentine's Day, February 14, 2002, Laux personally delivered a rose and card to Heidi at her place of work. Heidi gave the rose to a friend, disposed of the card, and told Laux what she did with his offerings.

The next day, Heidi and Laux agreed to attend a dance sponsored by Heidi's employer. Laux had the daughters for weekend visitation and brought them with him to the dance. During the dance, Laux became increasingly suspicious that Heidi was involved with a co-worker. Laux left the dance around 8:00, went home, and played cards with his daughters before going to bed. Around 3 a.m. the following morning, Laux awoke and decided to "fix" Heidi. He dressed in two pairs of sweatpants, a sweatshirt, gloves, a hat, and a ski mask. He collected a flashlight and a crowbar and ran to Heidi's house.

Upon arrival, Laux used the crowbar to pry open a coal chute and gain entrance to Heidi's house. He entered the basement through the chute and made his way upstairs. Laux proceeded to Heidi's bedroom, struck her three times with the crowbar, strangled her, and left. She died from her injuries within twenty minutes.

The State charged Laux with murder,[1] felony murder,[2] and burglary resulting in bodily injury.[3] It later requested a sentence of life in prison without parole. After a three-day trial, the jury found Laux guilty on all counts and recommended life in prison without parole. The trial court merged Laux's murder and felony murder convictions and sentenced him to life in prison without parole for the murder and a consecutive term of twenty years for the burglary. It also ordered that Laux was to have no contact with Heidi's family.

### I. Constitutional Questions

In an assortment of arguments, Laux contends that Indiana's death penalty statute is unconstitutional because the jury need not find all elements of the alleged crime. More specifically, he contends that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and the Sixth Amendment require the jury to find beyond a reasonable doubt that the aggravating factor(s) outweigh any mitigating factors before death or life without parole (LWOP) may be imposed. Recently, we directly addressed his contention in *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind. 2004):

> [T]he Indiana Death Penalty Statute does not violate the Sixth Amendment as interpreted by *Apprendi* and *Ring*. Once a statutory aggravator is found by a jury beyond a reasonable doubt, the Sixth Amendment as interpreted in

*Ring* and *Apprendi* is satisfied. Indiana now places the weighing process in the hands of the jury, but this does not convert the weighing process into an eligibility factor. The outcome of weighing does not increase eligibility. Rather, it fixes the punishment within the eligible range. It is therefore not required to be found by a jury under a reasonable doubt standard. And as a matter of Indiana state law, under the Indiana death penalty statute the weighing process is not subject to a reasonable doubt standard. That second step, consistent with the view we expressed in *Bivins*, is in part a determination whether to impose the maximum sentence allowed. That is an exercise in judgment that is not capable of evaluation beyond a reasonable doubt, and our statute properly omits any standard by which it is to be measured.

Laux's constitutional arguments failed on these grounds.

### II. Appropriate Procedures for No–Contact Order

■ As a part of Laux's sentence, the trial court ordered him to cease contact with Heidi's family, including Heidi's parents and Heidi and Laux's children. Laux contends that the inclusion of the order was improper and contravenes Indiana statutory law. We agree.

■ Indiana's statutory sentencing scheme specifies the penalties for various classes of offenses and grants trial judges some discretion. "While the judge is vested with broad discretion in sentencing, he must act within statutorily prescribed limits." *Douglas v. State*, 464 N.E.2d 318, 320 (Ind.1984).

---

1. Ind.Code Ann. § 35–42–1–1 (West 1998).

2. Ind.Code Ann. § 35–42–1–1(2) (West 1998).

3. Ind.Code Ann. § 35–43–2–1 (West 1998).

■ The trial court sentenced Laux in accordance with the statutes governing the crimes he committed. The general penalty for murder is "a fixed term at fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, the person may be fined not more than ten thousand dollars ($10,000)." Ind.Code Ann. § 35–50–2–3(a) (West 1998). Indiana's death penalty statute, Indiana Code § 35–50–2–9, authorizes either a sentence of death or life in prison without parole upon satisfying the requirements of the statute. Similarly, the code declares that the penalty for burglary as: "a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000)." Ind.Code. Ann § 35–50–2–5 (West 1998). By their own terms, these statutes do not authorize imposition of a no-contact order as part of an executed sentence. Had the court suspended part of the sentence for either crime, of course, it could certainly have conditioned that suspension on no contact.

To be sure, the trial court was hardly without the power to grant protection for Heidi's family and the children. Indiana's statutes provide a mechanism by which a victim may obtain a no-contact order. The legislature has created a variety of protective arrangements, recently revised to meet the various circumstances where a court order may be useful. *See* Ind.Code Ann. § 5–2–9–5 (West 1998) (listing various forms of protection, along with statutory cites.)

### III. Double Jeopardy

After the jury returned guilty verdicts on all three counts, the trial court merged the murder and felony murder counts and sentenced Laux to life without parole for murder. It imposed a consecutive term of twenty years for burglary as a class B felony. Laux contends that this sentence violates double jeopardy principles.

■ The Double Jeopardy Clause states that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause "yields three protections: (1) protection from reprosecution for the same offense after an acquittal; (2) protection from reprosecution for the same offense after conviction; and (3) protection from multiple punishments for the same offense." *Kennedy v. State*, 674 N.E.2d 966, 967 (Ind.1996) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (overruled on other grounds)).

Laux makes what we understand to be two separate arguments under the rubric of double jeopardy.

■ First, Laux argues that his conviction for both felony murder and the underlying felony violates double jeopardy because it effectively punishes him twice for the same conduct. (Appellant's Br. at 28–30). Quoting from *Kennedy*, Laux argues that "a conviction and sentence for both felony murder and the accompanying felony violates double jeopardy because the conviction for murder while in the commission of a felony could not occur without proof of the accompanying felony." *Id.* at 967.

■ Had Laux in fact been convicted and sentenced for felony murder, he would be entitled to relief. This is not what occurred. The trial court merged the felony murder conviction and the intentional murder conviction and entered judgment only for the latter. Under these circumstances, there is no double jeopardy viola-

tion. *Carter v. State,* 750 N.E.2d 778, 781 (Ind.2001) (stating that "a jury verdict on which the court did not enter judgment for one reason or another (merger, double jeopardy, etc.) is unproblematic."); *Kennedy v. State,* 674 N.E.2d 966, 967 (Ind.1996) (citing to six other cases reaching the same conclusion); *Moore v. State,* 652 N.E.2d 53, 59–60 (Ind.1995).[4]

■ Second, Laux argues that his sentence violates double jeopardy because the burglary was considered as an aggravating circumstance in the sentencing under Ind. Code § 35–50–2–9 (West 1998). (Appellant's App. 28–30). We disagree.

In *Overstreet v. State,* 783 N.E.2d 1140 (Ind.2003), we observed that the "facts necessary to establish the (b)(1) aggravating circumstance serve to narrow the eligibility for the penalty and are not identical to the elements of the crime." *Id.* at 1165 (citing *West v. State,* 755 N.E.2d 173, 186 (Ind.2001)). Because the felonies listed in Ind.Code § 35–50–2–9(b)(1) are not elements of the crime, but rather a list of permissible aggravators, they essentially serve a function analogous to sentencing enhancements. The statute thus indicates only what felonies are permissible to consider in imposing life without parole.

We have already implicitly accepted that sentencing aggravators do not constitute double jeopardy violations. In *Bivins v.*

*State,* 642 N.E.2d 928 (Ind.1994), we let stand both a death sentence, and a conviction and sentence for robbery that was used as an aggravator in sentencing Bivins under the death penalty statute. *Id.* at 949. In *Bivins,* the only double jeopardy violation we found to exist was the sentence and conviction for theft that was, itself, a lesser charge contained in the robbery conviction. *Id.*

The Supreme Court has repeatedly held that courts may consider past and concurrent criminal conduct in enhancing sentences. In *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), the Court reiterated that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." *Id.* at 399. In so doing, the Court upheld the "taking [of] the circumstances surrounding a particular course of criminal activity into account in sentencing for a conviction arising therefrom." *Id.* at 400. Similarly, the Court has upheld the consideration in sentencing of conduct underlying criminal charges of which the defendant was acquitted. *See, e.g., United States v. Watts,* 519 U.S. 148, 152–54, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam).[5] In the context of double jeopardy, then, Ind.Code § 35–50–

---

**4.** The Court of Appeals recently held otherwise, declaring that a trial court must "vacate" a jury finding on a felony murder charge that was merged into a separate murder charge. *Wilder v. State,* 813 N.E.2d 788, 793–94 (Ind.Ct.App.2004). To the extent that *Wilder* indicates that vacating a jury verdict is the appropriate remedy rather than merger and entering a judgment of conviction only on the merged count, we disapprove it.

**5.** It has been noted that the recent case *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) might call into question *Watts. See, United States v. Olivera–*

*Hernandez,* 328 F.Supp.2d 1185, 1187 (D.Utah, 2004)(speculating that a *"Blakely-*type holding striking down the Sentencing Guidelines would arguably require the Supreme Court to strike down [*Watts* as well as other cases].") While this may be true, we are as yet unsure of the reach of *Blakely.* Moreover, we believe that in the narrow context of the application of Indiana's death sentence/life without parole statute to Laux, *Blakely* poses no problem since the sentencing aggravators must be, and were, found by a jury beyond a reasonable doubt.

2–9(b)(1) does nothing more than restrict the scope of the trial court's discretion in considering the circumstances surrounding a crime to the examination of those specifically listed in the statute.

We acknowledge that *Woods v. State,* 547 N.E.2d 772 (Ind.1989) concluded that a sentence for robbery violated double jeopardy when it was used as an aggravator to sentence the defendant to death. *Id.* at 795. However, Woods reached this conclusion based on the premise that the "commission of a robbery is an essential element of the aggravating circumstance of committing an intentional killing in the course of committing a robbery." *Id.* We have since rejected this view of the aggravating factors listed in Ind.Code § 35–50–2–9, *see, Overstreet,* 783 N.E.2d at 1164–65, and therefore believe that insofar as it relates to double jeopardy, *Woods* was flawed.

Because "taking into account conduct related to the offense of conviction in sentencing is not the same thing as holding the defendant criminally culpable for that conduct," *United States v. Dawn,* 129 F.3d 878, 884 (7th Cir.1997), and because the (b)(1) aggravators are not elements of a crime, we conclude that the use of the class B burglary conviction as an aggravating factor in sentencing Laux to life without parole, as well as the sentencing of Laux to life without parole and twenty years for the burglary, did not violate the principles of double jeopardy.[6]

## IV. Laux's Request for Sentencing Revision

On October 24, 2003, we remanded this case to the trial court for a new sentencing order that complies with the requirements of Indiana Code § 35–50–2–9. (Appellant's Supp.App. at 18–20). *See, Harrison v. State,* 644 N.E.2d 1243, 1262 (Ind.1995) (section 9 requires judicial sentencing order specifying aggravating and mitigating circumstances and articulating facts in support of each); *Ajabu v. State,* 693 N.E.2d 921, 940 (Ind.1998) (same requirements apply for LWOP sentencing order). Our order read in relevant part: "The appellant is also to file any supplemental brief raising new claims of error associated with the revised sentencing order within forty-five days from the date the revised sentencing order is entered." (Appellant's Supp.App. at 19).

In his supplemental brief, Laux requests that we revise his sentence of life in prison. (Appellant's Supp. Br. at 8–9). In 2002, the General Assembly altered in important ways the relative roles of judge and jury under Indiana Code § 35–50–2–9, effective for sentencings conducted after June 30, 2002. We have not yet resolved the effect of these amendments on the sentencing role of the trial judge, the present requirements for sentencing orders, or the standard of appellate review. The parties have not argued any issues arising from the 2002 amendments. We thus reserve judgment on such questions and pursuant to paragraph number 3 of our remand order, we review Laux's claim on the merits.

Indiana Code § 35–50–2–9(*l*) provides that before life imprisonment without parole may be imposed as a sentence the jury must find that: "(1) the state has proved beyond a reasonable doubt that one

---

6. Indeed, logic requires that we reach this conclusion because if we found that consideration of criminal conduct in enhancing sentences violated double jeopardy, we would necessarily invalidate all habitual offender enhancements. This is an approach plainly rejected by the Supreme Court. *See, e.g., Witte v. United States,* 515 U.S. 389, 409, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *Schiro v. Farley,* 510 U.S. 222, 230–31, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994).

(1) of the aggravating circumstances listed in subsection (b) exists: and (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances."

On remand, the trial court's sentencing order clearly identifies that one of the aggravating factors listed in subsection (b) was proven beyond a reasonable doubt. Specifically, the trial court found that the state had proven the aggravating factor provided · in Ind.Code § 35–50–2–9(b)(1)(B): that the "defendant committed the murder by intentionally killing the victim while committing or attempting to commit.... Burglary." (Appellant's Supp.App. at 7)(the court specifically found "[t]hat the state proved beyond a reasonable doubt that the Defendant committed the murder while committing burglary.").[7] The trial court further stated that the State had proven that the killing was intentional. (Appellant's Supp.App. at 8–9). This is sufficient to satisfy the general requirement that the state prove beyond a reasonable doubt the existence of at least one aggravating factor.[8]

■ As for the court's finding that the aggravating factor outweighs any mitigating factors, Laux contends that the single aggravator charged was insufficient to support his sentence given the finding of a mitigating factor.[9] (Appellant's Supp Br. at 5–8). Specifically, Laux argues that his lack of significant prior criminal history outweighs the sole aggravator. *Id.* We do not agree.

Although the trial court did find as a mitigating factor that Laux lacked a significant prior criminal history (Appellant's Supp.App. at 9), the court was under no obligation to assign that factor any particular weight. As we have previously held, it is "the decision of the trial court to decide what weight mitigating factors are to be given." *Kingery v. State,* 659 N.E.2d

---

**7.** At the original sentencing portion of the trial, the jury also found that the murder was intentional, committed during a burglary, and that the aggravator outweighed the mitigating circumstances. (TR. at 580).

**8.** In *Clark v. State,* 808 N.E.2d 1183, 1194–95 (Ind.2004) we stated that "[n]either intentional nor, as the trial court found, 'premeditated' killing is a statutory aggravating factor under the death penalty statute." The issue in *Clark,* however,. was whether or not intentionality standing alone was an aggravating factor. In this case, the plain language of Ind. Code § 35–50–2–9(b)(1) indicates that intentionality is a partial factor if the murder occurred during the commission or attempted commission of one of the enumerated felonies.

**9.** Laux also contends that he was under the influence of extreme mental or emotional distress at the time he murdered his ex-wife. (Appellant's Supp Br. at 6–8). The trial court, however, gave careful consideration to the psychological pre-sentencing reports submitted by Dr. George M. Parker, M.D., and Dr. Velma Jean Atkinson, Ph.D. The court concluded that the contradictory reports did not establish that at the time of the murder Laux was under extreme emotional or mental distress. (Appellant's Supp.App. at 8–9). The court reached this conclusion even after accepting, hypothetically, the diagnosis of Dr. Parker who concluded that at the time of the murder Laux was suffering from "moderately severe major depression." *Id.* The court also noted that Dr. Parker's report concluded that there was "no evidence the depression impaired the Defendant's functional ability." *Id.* at 8.

Given the evidence in the record, and the evaluation of the trial court of that evidence, we cannot say that the trial court erred in finding that Laux was not under the influence of extreme mental or emotional stress at the time of the murder. *See, Clark v. State,* 808 N.E.2d 1183, 1195 (Ind.2004) (the "finding of mitigating factors is within the trial court's discretion."); *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) ("the trial court is not required to regard the defendant's evidence as mitigating simply because the defendant does.").

490, 498 (Ind.1995). *See also Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998). In this case, the trial court considered Laux's lack of prior criminal history, but in balancing the aggravating factor with this mitigating factor concluded that "the breaking and entering of the victim's home at approximately 3:00 a.m. with the intent to commit battery with a deadly weapon, is so onerous that it completely outweighs the mitigating circumstance." (Appellant's Supp.App. at 9). In short, as Justice Boehm once wrote, the trial court did what "it was entitled to do," it "considered [Laux's] lack of prior criminal history but declined to accord it significant weight." *Bunch,* 697 N.E.2d at 1258.

The record supports the trial court's conclusion that the aggravator outweighed any mitigating circumstances. Laux woke up in the middle of the night believing that he had to "fix"—murder—his ex-wife. In order to accomplish that goal, he dressed himself in dark clothes and a put on a dark face mask. He then ran to his ex-wife's home and broke into her home through the basement in the dead of night. Laux entered her bedroom where she was sleeping and struck her three times in the head with a crowbar before he finally strangled her. Laux then returned home and took steps to conceal his crime, both from his daughters, whom he had left alone in order to commit the murder, and the police.

Given the brutality of the crime, a brutality which Laux's counsel appropriately acknowledges, (Appellant's Supp. Br. at 8), we are not persuaded that the trial court and the jury were wrong in concluding that the high culpability embodied in the single aggravator outweighed Laux's lack of prior criminal history.

■ Laux also requests that we reduce his sentence in order to "bring it into line with the interests of justice." (Appellant's Supp. Br. at 9). Indiana Appellate Rule 7(B) permits this Court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

In making this request, Laux points out that he has "no prior record of any criminal offenses or history of violent acts," that he has been "consistently employed since of the age of 15," that he performed well in school and received a degree from Purdue University, and that this "crime is an aberration on an otherwise responsible, caring, peaceful, hardworking, and honest life." (Appellant's Supp. Br. at 9). Laux requests that we give consideration to his expression of remorse at the sentencing hearing. *Id.*

Although we agree that Laux's lack of criminal history, work ethic, educational achievement, and remorse have value; we cannot ignore the brutality of the crime that he committed. In light of all of the circumstances surrounding Laux's crime, we are not persuaded that the sentence is inappropriate.

### Conclusion

We vacate the no-contact order, but affirm in all other respects.

DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., dissents with separate opinion.

RUCKER, J., dissents from Part I of the majority opinion for the reasons expressed in *Ritchie v. State,* 809 N.E.2d 258, 271–74 (Ind.2004) (RUCKER, J., dissenting in part). In all other respects I fully concur.

SULLIVAN, Justice, dissenting.

I respectfully dissent in two respects from the Court's opinion.

## I

I believe the trial court acted within its discretion in entering an order prohibiting Laux from contacting Heidi's family, including Heidi's parents and Heidi's and Laux's children. Under the Indiana Civil Protection Order Act, Ind.Code § 34–26–5–1 (2004) et seq., and particularly Ind. Code § 34–26–5–9(b)(2), a court is authorized to order the relief that the trial court ordered here. Indeed, the Act specifically contemplates that its relief can be entered in conjunction with a criminal case. Ind. Code § 34–26–5–6(1) & (4) (2004). The Court's rationale appears to be that the persons protected by the order here did not request it in the form specified in the Act. However, there is no question but that they sought the protection granted (after sentencing, Heidi's father expressed his gratitude to the trial court for the order (Tr. at 597)) and also no due process concerns; the evidence that caused the trial court to enter the order was presented in open court and Laux had a chance to defend against it. (Tr. at 503, 505, 528, 529, 530–31, 533–34.) Given that the parties benefiting from the relief granted desired the relief and that Laux's due process rights were not violated, I believe the trial court acted within its discretion in entering an order prohibiting Laux from contacting Heidi's family.

## II

The Court reviews Laux's request that the sentence of life without parole be revised. The Indiana Constitution provides that "the Supreme Court shall have, in all appeals of criminal cases, the power to review and revise the sentence imposed." Ind. Const. art. VII, § 4. Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Unlike the Court, I would grant limited relief.

I turn first to "consideration of the trial court's decision."

When imposing a sentence of life without parole, the same heightened standards used in death penalty cases apply. *Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998) ("The statute provides that life without parole is imposed under the same standards and is subject to the same requirements."), after remand, 722 N.E.2d 339 (Ind.2000); *see also* Ind.Code § 35–50–2–9 (2004). Because a sentence of life in prison without parole is imposed under the same standards as the death penalty, we require the same specificity from a trial court sentencing a defendant to life in prison without parole as we would a court sentencing a person to death. *Ajabu*, 693 N.E.2d at 936. Neither *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) nor recent statutory changes[1] lessen these requirements. *Brown v. State*, 783 N.E.2d 1121, 1127 (Ind.2003).

As the Court points out, after briefing on this case was completed, we remanded this case to the trial court for a new sentencing order because the one originally entered by the trial court did not comply with these requirements. As the Court also points out, the trial court's revised sentencing order is sufficient to satisfy the general requirement that the trial court find that the state prove beyond a reasonable doubt the existence of at least one aggravating circumstance. It is certainly the case that a proper statutory aggrava-

---

**1.** "If the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Pub.L. No. 117–2002, § 35–50–2–9(e) (2004).

ting circumstance was charged and submitted to the jury ("the defendant committed murder by intentionally killing the victim while committing burglary"). The jury found that the State had met its burden of proof beyond a reasonable doubt. I conclude that the State has proven beyond a reasonable doubt that at least one of the aggravating circumstances listed in the statute exists. *See* Ind.Code § 35–50–2–9(k)(1) (1998). As such, I believe the sentence imposed is authorized by law. Furthermore, given the nature of Laux's attack on Heidi, I would assign this aggravating circumstance weight in the highest range.

However, in my view, the mitigating circumstances present in this case are such as to warrant a sentence less than life without parole. The trial court itself found that Laux had "no significant history of prior criminal conduct." Indeed, there is absolutely nothing of record to suggest that Laux ever had any difficulty with the law whatsoever—either as a juvenile or an adult. In my view, absence of criminal history is the weightiest of all mitigating circumstances. One who has conformed his or her conduct to the dictates of our society is entitled to consideration upon committing a first offense. Laux maintained a blemish-free legal history throughout his childhood and adulthood. The record indicates that following graduation from high school and Purdue University, Laux was hard-working, honest, and responsible. Under these circumstances, I would assign weight to the absence of any prior criminal history in the highest range.

Laux clearly was unable to deal with the separation from Heidi and must face severe consequences as a result of his terrible, violent behavior. It appears that he recognizes that fact and has expressed sincere remorse. The aggravating circumstance here is weighty indeed but in my view does not outweigh the mitigating circumstance. In light of the nature of the offense and character of the offender, I would revise the sentence imposed to 65 years in prison.