## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 21 2017, 10:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian Eldridge,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

February 21, 2017

Court of Appeals Case No.
02A03-1609-PC-2045

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause Nos.
02D06-1509-PC-109
02D04-0304-FA-23

**Brown, Judge.**

[1] Brian Eldridge appeals the denial of his petition for post-conviction relief. Eldridge raises two issues which we revise and restate as:

> I. Whether Eldridge was deprived of a procedurally fair post-conviction hearing; and
>
> II. Whether he was denied the effective assistance of trial counsel.

We affirm.

### Facts and Procedural History

[2] In February 2003, the State charged Eldridge under cause number 02D04-0302-FA-11 ("Cause No. 11") with: Count I, criminal deviate conduct as a class A felony; Count II, criminal deviate conduct as a class A felony; Count III, sexual battery as a class C felony; Count IV, sexual battery as a class C felony; Count V, sexual battery as a class C felony; Count VI, possession of legend drug or precursor as a class D felony; and Count VII, possession of legend drug or precursor as a class D felony. On April 14, 2003, the State charged Eldridge under cause number 02D04-0304-FA-21 ("Cause No. 21") with rape as a class A felony and sexual battery as a class C felony. That same day, the State charged Eldridge under cause number 02D04-0304-FA-23 ("Cause No. 23") with two counts of criminal deviate conduct as class A felonies and sexual battery as a class C felony.

[3] On September 26, 2003, Eldridge and the State entered into a plea agreement pursuant to which he agreed to plead guilty to criminal deviate conduct as a class A felony under Cause No. 11, rape as a class A felony under Cause No.

21, and criminal deviate conduct as a class A felony under Cause No. 23. The agreement further provided that the State would dismiss the remaining charges at sentencing and that the trial court would have "the final and full authority to impose the sentence it deems proper." Direct Appeal Appendix at 40(A). The agreement was signed by Eldridge and his attorney and stated:

> I, Brian S. Eldridge, represent that I am the defendant and that I have read this plea agreement or I have had my attorney read it to me. I represent that I understand the plea agreement and accept same voluntarily and without force, threat or other promises from anyone (other than the plea agreement).

> I further understand that I have a right to a speedy, public trial by court or by jury in the county in which the offense allegedly occurred; I have a right to require witnesses to be present at any hearing or at the trial for the purpose of testifying on my behalf and at my request subpoenas will be issued by the court requiring witnesses to appear for me; and, I have a right to remain silent and that I cannot be required to give any testimony or make any statement against myself to anyone. I understand that this plea of guilty waives (gives up) the aforesaid rights.

> All of which I hereby affirm under the penalties of perjury.

*Id.* at 40(C).

[4] On September 26, 2003, the court held a hearing. The court asked Eldridge if he wished to plead guilty to criminal deviate conduct as a class A felony under Cause No. 11, rape as a class A felony under Cause No. 21, and criminal deviate conduct as a class A felony under Cause No. 23, and he answered affirmatively. Eldridge indicated that he had never been treated for any mental

illness and did not suffer from any mental or emotional disability and was not under the influence of alcohol or drugs. The court informed Eldridge of his right to a speedy trial by a jury, the right to face all witnesses and question and cross-examine them, the right to require witnesses to be present, the right not to be compelled to make any statement, and the right to appeal his conviction if he went to trial and was found guilty. The court read the charges, and Eldridge indicated that he understood them. Eldridge indicated that he understood that by pleading guilty he would be admitting that he committed the crimes charged and that he would be found guilty and sentenced without a trial. Eldridge also indicated that he understood the possible sentences and that the court would decide whether the terms would be served concurrently or consecutively. Eldridge indicated that he signed the plea agreement, read it, discussed it with his counsel, his plea of guilty was his own free and voluntary act, and he was satisfied with his attorney. Eldridge then pled guilty pursuant to the plea agreement.

[5] Eldridge indicated that he administered a drug to L.M. without her knowledge and placed his finger in her vagina, that he administered a legend drug to J.P. without her knowledge and had sexual intercourse with her, and that he gave T.T. a drug without her knowledge and placed his finger in her vagina. The court stated: "I'll take the matter under advisement, refer the matter for pre-sentence investigation report." Direct Appeal Transcript at 17. The court scheduled a sentencing hearing for October 27, 2003. The prosecutor moved to submit a videotape of the incidents if the court wished to view them. Eldridge's

counsel objected, stated that a factual basis had been established, and stated: "I mean, that's part of what we're doing here, trying to avoid a [sic] protracted proceedings when it's clear to everyone what happened." *Id.* at 18. The court suggested noting the recording as an exhibit on the issue of factual basis, and Eldridge's counsel did not object "in so far as it's for the use of the court . . . ." *Id.*

[6] On October 27, 2003, the court held a sentencing hearing. Eldridge indicated that the presentence investigation report was correct. Eldridge's parents and uncle testified. Eldridge's counsel argued that Eldridge expressed a great deal of remorse and asked the court to sentence him to the minimum sentence of twenty years. Eldridge stated that he did not want his daughter watching the tapes, that he wanted to do right for his child, and that he respects the law. He also stated:

> And I thank [the prosecutor] for at least, you know, coming up with the least of three charges that he did come up with. You know, they're not to my liking because I would have pled guilty to all the five sexual batteries. But the criminal deviate conduct, man, I wasn't trying to hurt no one. I mean, that's all I can say dude, I mean, I wasn't trying to hurt anybody, I wasn't definitely trying to be back in this orange and jail. And the most thing I dislike is the fact that I hurt my friends. Because no one, no one was supposed to see the tape, and I was in the process of destroying it. But I decided to confess to this girl that I wanted, you know, that I had took pictures of her friend, and to go back and tell her because she was my friend too. Go back and tell her that I took pictures and then maybe it will ease the blow. But the bottom dropped out and here I am.

Sentencing Transcript at 24-25. After Eldridge's statement, his counsel submitted the following mitigating circumstances: his employment at the time of the offenses, his family support, his guilty plea, he turned himself in after he was confronted, his acceptance of responsibility, and long incarceration would work a hardship on his relationship with his daughter and his family responsibilities.

[7] The court indicated that it had not viewed the tape but that it was admitting the tape under seal only and that the only purpose of its admission was "to corroborate the plea of guilty should that ever become an issue." *Id.* at 27. The court found Eldridge's guilty plea and acceptance of responsibility as a mitigating factor. The court found Eldridge's criminal history and the nature of the offenses further compounded by "what must be humiliation in the filming of these terrible acts" as aggravators. *Id.* at 28. The court sentenced Eldridge to thirty years for each count to be served consecutive with each other for an aggregate sentence of ninety years. The court dismissed the remaining counts.

[8] On direct appeal, Eldridge argued that his sentence was inappropriate, and this court affirmed. *Eldridge v. State*, No. 02A04-0401-CR-48, slip op. at 2 (Ind. Ct. App. June 16, 2004).

[9] On July 6, 2005, Eldridge filed a *pro se* petition for post-conviction relief.[1] On August 8, 2005, a public defender filed a written appearance and notice of

---

[1] The record does not contain a copy of this petition.

inability to investigate. In December 2008, the public defender filed a notice of withdrawal.

[10] On September 30, 2015, Eldridge filed a *pro se* petition for post-conviction relief.[2] Eldridge alleged in part that his trial counsel was ineffective for failing to object to his being sentenced without the court accepting his guilty plea. On December 15, 2015, a public defender filed a notice of non-representation.

[11] On December 23, 2015, the State filed a motion to require Eldridge to submit his case by affidavit. That same day, the court entered an order granting the State's motion, granting Eldridge until April 4, 2016, to submit his case by affidavit, granting the State until June 6, 2016, to file a response, and ordering that the parties submit proposed findings of fact and conclusions of law on or before August 8, 2016. The court's order states in part:

> [Eldridge] shall promptly notify the court if he wishes to engage counsel to represent him in this matter.
>
> THE PETITION FOR POST-CONVICTION RELIEF MAY BE DISMISSED if [Eldridge] does not (1) submit his case for post-conviction relief by affidavit, (2) submit a written request for additional time in which to submit his case by affidavit, or (3) notify the court that he wishes to engage counsel to represent him, ON OR BEFORE THE DATE SPECIFIED ABOVE FOR SUBMITTING HIS CASE BY AFFIDAVIT.

---

[2] Eldridge alleged that his earlier petition for post-conviction relief was withdrawn without prejudice.

Appellant's Appendix at 46.

[12] On April 11, 2016, Eldridge filed his own affidavit in support of his petition asserting that his sentence was illegal and must be vacated because the trial court did not accept his guilty plea. On June 6, 2016, the State filed a response to Eldridge's affidavit.

[13] On June 20, 2016, Eldridge filed a *pro se* motion to compel interrogatories for his trial counsel alleging that he served an interrogatory on his trial counsel on March 8, 2016, requesting him to answer the questions within thirty days and his trial counsel had not answered the interrogatory. On June 24, 2016, the court denied Eldridge's motion to compel interrogatories.

[14] On August 5, 2016, an attorney filed an appearance for Eldridge. That same day, Eldridge by counsel filed a verified motion to continue the post-conviction action and argued that Post-Conviction Rule 1(9)(b) allowed the court to require a *pro se* petitioner to submit the case by affidavit, but Eldridge was no longer a *pro se* petitioner. Eldridge's counsel also alleged that she would need to conduct a complete investigation, review all records, conduct discovery, and meet with Eldridge. She also alleged that "[d]ue to counsel's case load, it will be at least a year before counsel is ready to litigate this case" and requested that the court vacate the order requiring Eldridge to submit his case by affidavit and continue the matter until counsel notified the court that she is ready to proceed. *Id.* at 85. The court denied the motion.

[15] On August 8, 2016, Eldridge filed proposed findings of fact and conclusions of law.[3] That same day, the court denied Eldridge's petition. The post-conviction court's order found that Eldridge was correct in stating that the trial court did not explicitly accept his guilty plea and states:

> 2. No Indiana decision appears to have precisely addressed the question whether a court implicitly accepts a defendant's guilty plea when, without explicitly accepting the plea, it accepts the plea as a mitigating factor and proceeds to sentence the defendant in accordance with the plea. The Court of Appeals has held that a court does implicitly accept a plea *agreement* when it accepts a guilty plea entered pursuant to the agreement. *Rogers v. State*, 715 N.E.2d 428, 429 (Ind. Ct. App. 1999). More generally, numerous decisions have addressed implicit acceptance of various matters, and have held that implicit acceptance may be inferred from conduct *consistent with acceptance* but *inconsistent with non-acceptance*. *See, e.g., Northern Indiana Public Service Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind. 2006) (Court of Appeals' issuance of opinion on the merits constituted implicit acceptance of discretionary interlocutory appeal); *Parrish v. Toth*, 559 N.E.2d 369, 370-371 (Ind. Ct. App. 1990) (trial court implicitly accepted civil defendant's amended answer, asserting affirmative defense of right of set-off, by allowing defendant to present evidence regarding that defense during presentation of damages evidence); *Laux v. State*, 821 N.E.2d 816, 820 (Ind. 2005) (Indiana Supreme Court "implicitly accepted that sentencing aggravators do not constitute double jeopardy violations" by letting stand both a death sentence and a conviction and sentence for robbery that was used as an aggravator in sentencing under death penalty statute); *Ringo v. State*, 736 N.E.2d 1209, 1211-1212 (Ind. 2000)

---

[3] Eldridge's document states: "COMES NOW Petitioner, Brian Eldridge, by pro se representation, and tenders his Proposed Findings of Fact and Conclusions of Law . . . ." Appellant's Appendix at 87.

(waiver of *Miranda* rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights, even if defendant has not explicitly waived rights); *Hierlmeier v. North Judson-San Pierre Bd. of School Trustees*, 730 N.E.2d 821, 824 (Ind. Ct. App. 2000) (teacher, alleged to have engaged in inappropriate behavior, implicitly accepted future date for school board's consideration of cancellation of his contract by failing to object to future date and to request immediate vote at conclusion of hearing). No known decision is to the contrary. From the principle underlying these decisions, it logically follows that this Court implicitly accepted Mr. Eldridge's guilty plea when it noted the plea as a mitigating factor, dismissed nine (9) counts pursuant to the plea agreement, and proceeded to sentence him in accordance with the plea.

3. Furthermore, even if the Court's act of sentencing Mr. Eldridge in accordance with his guilty plea had not constituted implicit acceptance of the plea, [Eldridge's trial counsel] could not have affected the ultimate outcome of the proceeding by objecting. Had [trial counsel] timely objected at sentencing that the Court had not yet accepted the plea, the Court could easily have corrected the claimed error by accepting the plea before proceeding to sentence Mr. Eldridge. In no event could the Court's technical error (if any), in not explicitly accepting the guilty plea, entitle Mr. Eldridge to an undeserved windfall in the form of vacation of the guilty plea, because the remedy for an error must not be more severe than necessary to correct the error. *See, e.g., Randolph v. State*, 755 N.E.2d 572, 575 (Ind. 2001). Counsel will not be found ineffective for failing to raise an objection that would not have affected the outcome of the proceeding. *See Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006) (claim of ineffective assistance will not succeed without showing of reasonable probability that outcome of proceeding was affected by counsel's claimed errors).

4. [Eldridge] has failed to prove his claim on the merits by a preponderance of the evidence.

*Id.* at 96-98.

## *Discussion*

[16] Before discussing Eldridge's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

I.

The first issue is whether Eldridge was deprived of a procedurally fair post-conviction hearing. Eldridge argues that he was deprived of his right to a procedurally fair determination of his claims when the post-conviction court denied his request to compel his trial and appellate counsel to respond to interrogatories, required him to submit the case by affidavit, and refused to grant a continuance to give his post-conviction counsel adequate time to consult with him, review the record, and amend the petition if necessary. He acknowledges that the civil discovery rules do not permit a party to serve interrogatories upon a non-party but do permit a party to take oral and written depositions of a non-party and to serve a non-party with a discovery request.

The State notes Eldridge's acknowledgement that the civil rules governing post-conviction proceedings do not permit a party to serve interrogatories upon a non-party. It argues that the post-conviction court did not err when it required the cause to proceed by affidavit where the appearance of counsel occurred well after the cause had already proceeded by affidavit. The State also contends that the trial court did not abuse its discretion in denying Eldridge's motion to continue given the lateness of the motion, lack of specific claims, and procedural posture.

Ind. Post-Conviction Rule 1(9)(b) provides in part:

> In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the pro se petitioner requests

issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

[20] Ind. Post-Conviction Rule 1(5) provides:

All rules and statutes applicable in civil proceedings including pre-trial and discovery procedures are available to the parties, except as provided above in Section 4(b). The court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant brought before it for the hearing. The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence.

[21] Generally, "if the PCR court orders the cause submitted by affidavit under Rule 1(9)(b), it is the court's prerogative to determine whether an evidentiary hearing is required, along with the petitioner's personal presence, to achieve a 'full and fair determination of the issues raised[.]'" *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. We review the post-conviction court's decision to forego an evidentiary hearing when affidavits have been submitted under Rule 1(9)(b) under an abuse of discretion standard. *Id.* The post-conviction court has the discretion to determine whether to grant or deny the petitioner's request for a subpoena. *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015), *trans. denied*. We will not reverse a trial court's decision on discovery absent an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1133

(Ind. 1997), *reh'g denied*. As for Eldridge's motion to continue, it is well-established that we review the grant or denial of a continuance for abuse of discretion. *Tapia v. State*, 753 N.E.2d 581, 586 (Ind. 2001). An abuse of discretion occurs only where the evidence is clearly against the logic and effect of the facts and circumstances. *See Pannell*, 36 N.E.3d at 486; *Evans v. State*, 809 N.E.2d 338, 342 (Ind. Ct. App. 2004), *trans. denied*.

[22] We hold in Part II below that Eldridge's trial counsel was not ineffective for failing to object to the trial court's failure to explicitly accept the plea agreement. The claims raised in Eldridge's petition and his affidavit did not raise issues which required any factual determination, and Eldridge fails to establish how the testimony of his trial counsel or an evidentiary hearing would have aided him. We cannot say that the post-conviction court abused its discretion in ordering the parties to proceed by affidavit in its December 23, 2015 order, in denying Eldridge's request to compel his trial and appellate counsel to respond to interrogatories, or in denying his motion for a continuance. The motion did not allege the possibility of additional claims and was filed more than ten months after his September 2015 petition, four months after the date the court imposed for Eldridge to submit his case by affidavit, and three days before the date proposed findings of fact and conclusions thereon were due. *See Pannell*, 36 N.E.3d at 487 ("[T]he facts in the record are sufficient for us to address [the petitioner's] arguments because we may conclude from the face of [the petitioner's] motion that the testimony he expected from his requested witnesses would not have been relevant or probative to his post-

conviction ineffective assistance of counsel or prosecutorial misconduct claims and, therefore, the post-conviction court was not required to issue his subpoena requests. As a result, the post-conviction court did not abuse its discretion, and the court's failure to enter findings before denying the subpoenas was not a reversible error."), *trans. denied*; *Smith*, 822 N.E.2d at 201 (holding that "other than claiming that the affidavits he and the State submitted raised issues of fact, [the petitioner] has failed to show how an evidentiary hearing would have aided him"); *Lloyd v. State*, 717 N.E.2d 895, 902 (Ind. Ct. App. 1999) (holding that petitioner failed to present an issue of fact which would afford him a hearing regarding his assertion that his trial counsel was ineffective in failing to object to a prosecutor's comment), *reh'g denied*, *trans. denied*.

## II.

[23] The next issue is whether Eldridge was denied the effective assistance of trial counsel. He asserts that his trial counsel's failure to object when the court imposed sentence without having accepted his guilty plea resulted in him being sentenced without first having been convicted and that this amounted to fundamental error requiring reversal even absent any showing of prejudice. The State argues that Eldridge's defense counsel had no reasonable basis for objecting to the sentence and that Eldridge cannot show that an objection would have altered any of the results as the trial court would simply have made its acceptance of the guilty plea more explicit.

[24]    Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Hilliard v. State*, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[25]    When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73

(Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002)).

[26] "When a defendant pleads guilty, he makes a judicial admission of actual guilt." *Ford v. State*, 570 N.E.2d 84, 87 (Ind. Ct. App. 1991) (citing *Patton v. State*, 517 N.E.2d 374, 375 (Ind. 1987), *reh'g denied*), *trans. denied*. "The plea itself is a guilty verdict." *Id.* (citing *McKrill v. State*, 452 N.E.2d 946, 949 (Ind. 1983)). "It has long been the law in this state that no reversible error occurs when a court conducts a hearing at which a guilty verdict is made, does not formally enter judgment on that verdict, but then sentences the defendant." *Id.* (citing *Thompson v. State*, 492 N.E.2d 264, 271-272 (Ind. 1986), *reh'g denied*). The Indiana Supreme Court has held that "[f]ailure to enter judgment prior to

sentencing does not constitute error where the defendant is otherwise properly sentenced." *Thompson*, 492 N.E.2d at 272.

[27] Moreover, as pointed out by the post-conviction court and the State, if Eldridge's trial counsel had objected, the trial court could easily have corrected the claimed error by accepting the plea agreement. Thus, Eldridge cannot show he was prejudiced by his counsel's failure to object on that basis. The evidence as a whole does not unerringly and unmistakably lead to a conclusion opposite that reached by the post-conviction court.[4] *See Ford*, 570 N.E.2d at 87 (rejecting the petitioner's argument that the trial court erred by sentencing him without having formally accepted his guilty plea on the record and observing that the petitioner did not deny his guilt and affirmed several times to the trial court prior to sentencing he was pleading guilty).

## *Conclusion*

[28] For the foregoing reasons, we affirm the post-conviction court's denial of Eldridge's petition for post-conviction relief.

[29] Affirmed.

---

[4] To the extent Eldridge asserts fundamental error, the Indiana Supreme Court has stated that it is wrong to review a fundamental error claim in a post-conviction proceeding, that "the fundamental error exception to the contemporaneous objection rule applies to direct appeals," and that "[i]n post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

Vaidik, C.J., and Bradford, J., concur.