# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH E. RUSSELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 28A01-1112-CR-559 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1011-FB-198

**May 21, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Kenneth E. Russell appeals his sentence for two counts of battery as class B felonies.[1] Russell raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. On cross-appeal, the State asserts that the trial court abused its discretion by allowing Russell to file a belated notice of appeal. We affirm.

The relevant facts follow. Russell, who was born on November 6, 1984, was married to Constance Russell. The couple had two children, a son born in 2008, and another son, C.W.R., born on October 6, 2010. On October 23, 2010, Russell was in charge of C.W.R. and grabbed him around the ribcage, squeezed him, and shook him in an attempt to stop his crying. C.W.R. suffered fractured ribs as a result of Russell's actions.

On November 7, 2010, Constance went to the grocery store for approximately an hour, and C.W.R. began crying while in Russell's care. Russell became frustrated and angry, grabbed C.W.R. "pretty hard around the rib cage," picked him up, and shook him to try and stop him from crying. Transcript at 11. C.W.R. stopped breathing, and Russell made efforts to perform CPR. Russell reported that Constance walked through the door just as C.W.R. became limp, and that Constance called 911. An ambulance arrived and took C.W.R. to the hospital. An assessment of C.W.R. indicated that he suffered bruises at his chest wall and rib cage, multiple rib fractures, extensive retinal hemorrhages, and severe brain injury.

---

[1] Ind. Code § 35-42-2-1 (Supp. 2009).

In November 2010, the State charged Russell with three counts of battery as class B felonies.[2] On March 17, 2011, the court scheduled a jury trial for May 9, 2011. On April 27, 2011, a negotiated plea agreement was filed in which Russell agreed to plead guilty to Counts I and III as charged, and the State agreed to dismiss the second count and not make a sentencing recommendation. Sentencing was left to the discretion of the trial court. The court cancelled the scheduled jury trial, accepted the plea agreement, and Russell pled guilty pursuant to the terms of the plea agreement.

On July 1, 2011, the court held a sentencing hearing and found the following aggravating factors: (1) "[s]pecific to Count 1, the harm, injury, loss, or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense;" (2) the age of the victim; (3) Russell was in a "position of having care, custody, or control of the victim;" (4) the injury was the result of shaken baby syndrome; (5) Russell had sought help from family and health care providers before when he experienced mental health issues, knew his actions at the time of the first offense were inappropriate, and had the opportunity to seek help or obtain assistance with his stress in order to prevent future episodes. Appellant's Appendix at 15. The court found Russell's lack of criminal history, guilty plea and acceptance of responsibility, display of genuine remorse and sorrow, and history of mental health issues as mitigators. The court also found as mitigators the fact that the crimes were the result of circumstances that were unlikely to recur and that Russell's history and character indicate that he is unlikely

---

[2] The chronological case summary ("CCS") indicates that two of the counts were filed on November 7, 2010, and one of the counts was filed on October 15, 2010. The State indicates that the date of October 15, 2010 in the CCS appears to be an error.

to commit another crime. The court found that the aggravating factors substantially outweighed the mitigating factors.

The court sentenced Russell to fifteen years with three years suspended on Count I and twelve years with two years suspended on Count III. The court ordered the sentences to be served consecutive with each other for an aggregate executed sentence of twenty-two years. The court informed Russell that the right to appeal may be forfeited if a notice of appeal was not filed within thirty days. Russell indicated that he intended to pursue an appeal of the sentence. The following exchange then occurred:

> BY THE COURT: Okay. I'll have Mr. Riester assist you and make sure a notice of appeal is timely filed so you do not lose any rights to appeal and the Court will appoint the State Public Defender's Office who will assign an attorney to represent you through the appellate process. Okay? Do you understand that?
>
> RUSSELL: Yes.

Transcript at 62. The sentencing order dated July 1, 2011, states:

> [Russell] advises the Court that he does desire to appeal the sentences imposed in this case. The Court hereby orders the State Public Defender appointed to represent [Russell] in his appeal, and attorney James Riester's appointment shall remain in effect in order to assist [Russell] until such time that appellate counsel enters their Appearance.

Appellant's Appendix at 35(j).

On July 5, 2011, the court issued an order appointing counsel for appeal which stated:

> [Russell] has notified the Court on this date that a Notice of Appeal will be filed and is requesting Court Appointed Counsel for Appeal Purposes. The Court, being duly advised in the premises, now appoints the Indiana State Public Defender's Office, One North Capitol, Suite 800, Indianapolis, IN 46204-2026, to represent [Russell] for purposes of

4

appealing his sentence.   The Indiana State Public Defender is hereby notified accordingly and requested to appear.

Id. at 35(g).

On October 3, 2011, a member of the Greene County Circuit Court staff contacted Sharon Ford, the Senior Supervising Secretary at the State Public Defender's Office to check the status of a sentencing appeal for Russell.  Ford informed the individual that she had never received any information about a direct appeal appointment and a search for Russell's case in their internal office database returned no results.  Later that day, the Greene County Circuit Court faxed a copy of the order appointing the State Public Defender to handle the appeal, and Ford contacted a contract attorney on October 5, 2011.  On October 6, 2011, Ford prepared the necessary paperwork to show that the State Public Defender had accepted the appellate appointment and had appointed a contract attorney to handle Russell's case.  On October 7, 2011, the Public Defender filed an Acceptance of Appointment and Formal Notice of Appointment of Outside Counsel. Russell's mother contacted the Greene County Clerk's Office or the court staff to inquire about the status of Russell's appeal on October 4, 7, and 11, 2011.

On November 9, 2011, Russell filed a petition for permission to file a belated notice of appeal and attached a copy of the case chronological summary, the order appointing counsel for appeal dated July 5, 2011, the sentencing order, an affidavit of Ford, and an affidavit of Russell's mother.  The court granted Russell's petition the following day and found that Russell was "without fault in failing to file a timely notice of appeal and was diligent in seeking permission to file a belated notice of appeal under Indiana Post-Conviction Rule 2." Id. at 36.

5

We first address the State's argument that the trial court abused its discretion by granting Russell's motion for a belated appeal because, if it has merit, it would be dispositive of Russell's claims. Generally, the decision whether to grant permission to file a belated notice of appeal or belated motion to correct error is within the sound discretion of the trial court. Moshenek v. State, 868 N.E.2d 419, 422 (Ind. 2007), reh'g denied. However, if the trial court does not hold a hearing before granting or denying a petition to file a belated notice of appeal, the appellate court owes no deference to the trial court's decision, and the review of the granting of the petition is *de novo*. Baysinger v. State, 835 N.E.2d 223, 224 (Ind. Ct. App. 2005). Here, Russell filed his petition for permission to file a belated notice of appeal on November 9, 2011, and the court granted the petition the following day. The State indicates that no hearing was held on the petition, Russell does not dispute this fact, and our review of the record does not reveal that a hearing was held. Therefore, we will review the trial court's grant of the petition *de novo*. See id.

Ind. Post-Conviction Rule 2 permits a defendant to seek permission to file a belated notice of appeal and provides:

(a)  Required Showings. An eligible defendant[3] convicted after a trial or plea of guilty may petition the trial court for permission to file a belated notice of appeal of the conviction or sentence if;

(1)  the defendant failed to file a timely notice of appeal;

---

[3] "An 'eligible defendant' for purposes of this Rule is a defendant who, but for the defendant's failure to do so timely, would have the right to challenge on direct appeal a conviction or sentence after a trial or plea of guilty by filing a notice of appeal, filing a motion to correct error, or pursuing an appeal." Ind. Post-Conviction Rule 2.

6

(2)   the failure to file a timely notice of appeal was not due to the fault of the defendant; and

(3)   the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

Thus, Russell was required to show that his failure to file a timely notice of appeal was not his fault and that he had been diligent in requesting permission to file a belated notice of appeal.

"The defendant bears the burden of proving by a preponderance of the evidence that he was without fault in the delay of filing and was diligent in pursuing permission to file a belated motion to appeal." Moshenek, 868 N.E.2d at 422-423. There are no set standards of fault or diligence, and each case turns on its own facts. Id. at 423. The Indiana Supreme Court has held that several factors are relevant to the defendant's diligence and lack of fault in the delay of filing. Id. "These include 'the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system, whether the defendant was informed of his appellate rights, and whether he committed an act or omission which contributed to the delay.'" Id. (citing Tredway v. State, 579 N.E.2d 88, 90 (Ind. Ct. App. 1991), trans. denied). The Court also set forth factors specifically related to diligence. Id. at 424. "Among them are the overall passage of time; the extent to which the defendant was aware of relevant facts; and the degree to which delays are attributable to other parties . . . ." Id.

The State argues that Russell was not diligent and that "[o]nly after being prompted by the court did a member of [Russell's] family attempt to initiate an appeal."

7

Appellee's Brief at 7. The State points out that "even after the public defender's office became aware of the appeal, it did not file an appearance for an additional thirty-five days." Id. The State also argues that Russell and his trial counsel did not contact the public defender's office after receiving notice that the court had appointed the public defender's office on July 5, 2011.

Russell argues that he is without fault, "did everything necessary to ensure that his right to an appeal would be preserved," and that he was diligent in seeking permission to pursue a belated direct appeal. Appellant's Reply Brief at 5. Russell asserts that "only two months passed between the date the notice of appeal was due to be filed (August 1, 2011) and the date Russell's mother first contacted the trial court to inquire about the status of her son's appeal (October 4, 2011)." Id. at 5. Russell points out that the State Public Defender's office took only a few days to secure contract appellate counsel and forward the necessary paperwork once the office learned that it had been appointed to perfect the appeal. Russell also contends that his appellate counsel could not simply file a petition with no supporting documentation.

The record reveals that Russell had no criminal history prior to the current offenses, that he indicated at the sentencing hearing that he intended to pursue an appeal, and that the court informed Russell: "I'll have Mr. Riester assist you and make sure a notice of appeal is timely filed so you do not lose any rights to appeal and the Court will appoint the State Public Defender's Office who will assign an attorney to represent you through the appellate process." Transcript at 62. The sentencing order dated July 1, 2011, and the July 5, 2011 order both indicated that the State Public Defender was

8

appointed to represent Russell. According to the affidavit of Ford, the Senior Supervising Secretary at the State Public Defender's Office, she did not have Russell's case in their internal office database and never received any information about the appointment until October 3, 2011, when a member of the Greene County Circuit Court staff contacted her to check the status of Russell's appeal. Ford contacted a contract attorney and the Public Defender filed an Acceptance of Appointment and Formal Notice of Appointment of Outside Counsel on October 7, 2011. The record also reveals that Russell's mother contacted the Greene County Clerk's Office or the court staff to inquire about the status of Russell's appeal on October 4, 7, and 11, 2011. While there was a thirty-three day delay between the filing of the appearance of appellate counsel and the filing of the petition for permission to file a belated notice of appeal, we observe that the petition contained multiple exhibits including two affidavits. Under the circumstances, we cannot say that the court erred in granting Russell's permission to file a belated notice of appeal.[4]

## II.

The next issue is whether Russell's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the

---

[4] The State cites Reid v. State, 883 N.E.2d 872 (Ind. Ct. App. 2008), in support of its argument that we should reverse the trial court. In Reid, the defendant did not include any facts or evidence in support of his petition, the defendant did not respond to the State's allegation on cross-appeal, and the court concluded that "[w]ithout evidence regarding his diligence and lack of fault, [the defendant] cannot have met his burden of proof." 883 N.E.2d at 874. We find Reid distinguishable as Russell attached a number of items to his petition for permission to file a belated notice of appeal and responded to the State's argument on appeal.

offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Russell argues that while the nature of the injuries was devastating, "it is also without dispute that [he] did not intend to harm [C.W.R.]." Appellant's Brief at 4. Russell argues that he was unaware of the devastating consequences his actions would have on C.W.R. because C.W.R. was under a doctor's care after he was born and the doctor never noticed any injuries until C.W.R. was taken to the hospital.[5] Russell asserts that he immediately began resuscitating C.W.R. and sought medical attention as soon as he realized that C.W.R. was seriously injured. Russell also argues that he is at a low risk for reoffending, the circumstances are unlikely to recur, the crimes were committed as a result of extreme stress, that he has no criminal history, was very remorseful, and

---

[5] The record reveals that C.W.R. had a doctor's visit on October 26, 2010, and was "[w]ell-appearing." Defendant's Exhibit B. C.W.R. had another doctor's visit on November 3, 2010, and appeared healthy with no abdominal tenderness. The record also contains a medical report on C.W.R. which indicates that the timing of C.W.R.'s initial injuries may be difficult to determine.

10

accepted responsibility. Russell also argues that he suffers from serious mental and emotional problems and attempted suicide one month prior to the first offense.

The State argues that Russell "lashed out at the child who was utterly defenseless" and that "[a] parent who is capable of visiting the level of devastation on his own defenseless child that [Russell] has can make no claim to sterling character regardless of his lack of prior interactions with the law." Appellee's Brief at 9. The State also argues that C.W.R., who had otherwise been a healthy baby prior to the batteries, will never be able to walk, talk, or see as a result of his brain injuries.

Our review of the nature of the offense reveals that on October 23, 2010, Russell was in charge of his own seventeen-day-old son C.W.R., grabbed C.W.R. around the ribcage, squeezed him, and shook him. On November 7, 2010, while Russell was responsible for taking care of then one-month-old C.W.R. because his wife went to the grocery store for approximately an hour, Russell became frustrated and angry, grabbed C.W.R. "pretty hard around the rib cage," picked him up, and shook him. Transcript at 11. C.W.R. suffered bruises at his chest wall and rib cage, multiple rib fractures of different ages, extensive retinal hemorrhages, and severe brain injury as a result of the two incidents. C.W.R.'s "current medical prognosis is guarded given his severe brain injury and new onset seizures as a result of his injuries." State's Exhibit 2 at 8. C.W.R. has "begun to have electrolyte derangements as a result of his severe brain injury" and "will most certainly have long-term significant neurological impairment as a result of his severe injuries." Id. At the time of the presentence investigation report, C.W.R. was

11

blind and the report indicated that further assessment would be needed to determine if the condition is permanent.

Our review of the character of the offender reveals that Russell has no criminal history and stated at the sentencing hearing: "I just wanted to say I'm sorry for everything that happened. I didn't mean for anything to happen. I had been under a lot of stress. I'm still under a lot of stress and I would, if I could take it back, I would." Transcript at 44. Russell pleaded guilty, and the State dismissed a charge of battery resulting in serious bodily injury as a class B felony.

Russell began smoking marijuana at the age of twelve and was smoking "a joint or so" a day in high school, and this habit continued until the time of his arrest. Presentence Investigation Report at 8. Russell also abused Xanax since 2009.

To the extent that Russell raises the issue of his mental health, we observe that Russell's mother testified at the sentencing hearing that she took Russell to see a doctor after he told her: "I just feel like I'm going crazy," and that he needed help. Transcript at 31. On February 16, 2010, Russell saw a doctor who identified a problem with anxiety depression and prescribed Paxil. Russell visited a doctor on May 24, 2010, and was "doing well with anxiety," was "much better," and had no complaints. Defendant's Exhibit A. The record indicates that Russell's anxiety depression improved and that the dose of Paxil would increase in three months.

Russell's mother testified that Russell separated from his wife in September 2010, could not find a job, and there were three deaths in the family. She also testified that

Russell attempted suicide in September 2010 by taking fourteen Xanax pills and ten sleeping pills.

The trial court identified Russell's mental health issues and life stress as a mitigating circumstance but gave it minimal weight because Russell had the opportunity to seek help and prevent the second act and knew how to seek help because he had done so previously. The court also stated that Russell's family members believed that he was functioning appropriately and had observed him on nearly a daily basis individually and with his children and there appeared to be no impact from a mental health condition.

Given the extreme consequences of Russell's batteries upon C.W.R. and after due consideration and under the circumstances, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. See Laux v. State, 821 N.E.2d 816, 823 (Ind. 2005) ("Although we agree that [the defendant's] lack of criminal history, work ethic, educational achievement, and remorse have value; we cannot ignore the brutality of the crime that he committed. In light of all of the circumstances surrounding [the defendant's] crime, we are not persuaded that the sentence is inappropriate."); Ray v. State, 838 N.E.2d 480, 495 (Ind. Ct. App. 2005) (observing that the defendant did not have a criminal history but holding that his thirty-year sentence for battery as a class A felony for shaking a baby was not inappropriate given the extreme consequences of the defendant's battery upon the victim), trans. denied.

For the foregoing reasons, we affirm Russell's sentence for two counts of battery as class B felonies.

Affirmed.

KIRSCH, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH E. RUSSELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 28A01-1112-CR-559 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BAKER, Judge, concurring in part and dissenting in part.**

I agree with the majority's determination that the trial court properly exercised its discretion in granting Russell's motion for a belated appeal. However, I part ways with the decision to affirm the trial court's imposition of consecutive sentences in this instance.

I am in no way suggesting that the seriousness of these offenses be depreciated, and I certainly acknowledge the severity of the injuries that C.W.R. sustained. However, the uncontroverted evidence shows that Russell has no prior criminal history, he decided to plead guilty to the offenses and showed genuine remorse and sorrow for his actions. Tr. p. 55. The record also demonstrates that Russell suffered from mental and emotional problems and sought mental health treatment several months prior to these incidents.

Moreover, the trial court noted that Russell's risk of reoffending is very low. Tr. p. 30, 34. For all of these reasons, I would direct the trial court to order the sentences to run concurrently with each other.