## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2016, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Krysti I. LaVanway,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 13, 2016

Court of Appeals Case No.
50A05-1601-CR-202

Appeal from the Marshall Superior Court.
The Honorable Robert O. Bowen, Judge.
Cause No. 50D01-1509-F1-10

**Barteau, Senior Judge**

# Statement of the Case

[1] Krysti I. LaVanway[1] appeals the thirty-five-year sentence the trial court imposed after she pleaded guilty to neglect of a dependent resulting in death, a Level 1 felony. We affirm.

# Issues

[2] LaVanway raises two issues, which we restate as:

    I.    Whether the trial court abused its discretion in the course of sentencing LaVanway.

    II.    Whether LaVanway's sentence is inappropriate in light of the nature of the offense and her character.

# Facts and Procedural History

[3] LaVanway lived in a motel in Plymouth, Indiana, with her boyfriend, Shane Weedling, and her two-year-old daughter from a previous relationship, S.W. LaVanway had a job but Weedling did not, so Weedling watched S.W. while LaVanway was at work.

[4] On September 18, 2015, LaVanway went to work at 5:20 a.m. and left S.W. in Weedling's care. Between 9:30 and 10:00 a.m., Weedling texted LaVanway to say he was upset because S.W. had wet the bed again, and he did not want S.W. to stay with them anymore. Later, he sent another message stating that

---

[1] LaVanway's last name is spelled several different ways in the record. We use the spelling she provided when she testified in court.

he had beaten S.W. and would continue to beat her until LaVanway returned home. LaVanway responded that she would try to get off work.

[5] LaVanway returned to the motel room at 11:30 a.m. and found S.W. unconscious and unresponsive. Her face was bloody. Weedling did not want LaVanway to take S.W. to the hospital because "he was afraid he'd get in trouble." Tr. p. 30.

[6] Several hours later, S.W. was still unconscious and unresponsive, and LaVanway asked a neighbor to drive her and S.W. to the hospital. They arrived at 2:21 p.m. An attending physician noted S.W. had injuries consistent with physical abuse, including life-threatening head injuries, and hospital staff called the police. Detective Sergeant Leo Mangus of the Plymouth Police Department was dispatched to the hospital and spoke with LaVanway. She agreed to go to the police station for questioning. Meanwhile, S.W. was transported by helicopter to a hospital in Fort Wayne for specialized emergency treatment.

[7] At the police station, LaVanway told Detective Mangus that S.W. had fallen in the shower after she had left the bathroom, and she immediately took S.W. to the hospital. She further said Weedling had been at the grocery store at the time. LaVanway consented to a search of her motel room, and Detective Mangus took her there.

[8] When they arrived, Weedling was asleep. Detective Mangus woke him and questioned him. Weedling said he was in the motel room, but not the

bathroom, when S.W. fell.  Detective Mangus and another officer took Weedling and LaVanway back to the police station.

[9]  During a search of the motel room, officers discovered red stains on the mattress of the bed, as well as red stains on a pillow on a child's mattress.  They also found bloody tissues and a diaper with red stains, a hairbrush that had been broken in half, and a green, child-sized shirt with multiple red stains.

[10]  At the police station, LaVanway changed her story and told Detective Mangus that Weedling had been in the motel room when S.W. was injured.  She further stated she accidentally dropped S.W. in the shower, and Weedling was not in the bathroom at the time.  The detective questioned Weedling separately.  He said LaVanway had been at work when S.W. was injured, and he had asked her to come home.

[11]  Later, after Detective Mangus reviewed Weedling and LaVanway's text messages and discussed them with her, LaVanway admitted that she had returned to the motel room at 11:30 and had delayed taking S.W. to the hospital to avoid getting Weedling in trouble.

[12]  S.W. died in the hospital on September 19, 2015, without regaining consciousness.  An autopsy revealed S.W. had injuries to her buttocks, forehead, left cheek and ear, mouth, right arm, right foot, left shoulder, and back.  Some of the injuries were older than others.  The marks on S.W.'s buttocks were consistent with being struck with the broken hairbrush the

officers found in the motel room.  The cause of death was homicide, resulting from blunt force trauma to the head.

[13]     The State charged LaVanway with neglect of a dependent resulting in death, a Level 1 felony.  The parties reached a plea agreement and submitted it to the trial court, but LaVanway later sought and received permission to withdraw from the agreement.  She pleaded guilty without a plea agreement, and the court accepted her plea.  At the sentencing hearing, the court identified two mitigating factors, namely LaVanway's lack of an adult criminal record and her guilty plea.  The court listed the following aggravating circumstances in its order of judgment:

   a.   The Defendant lied to police, medical personnel and investigators during the investigation.  Those lies were an attempt to "cover-up" the crime committed.
   b.   As a result of the lies, medical personnel were not immediately told how [S.W.] sustained her injuries.  Such lack of knowledge could have impeded their diagnosis and emergency care.
   c.   There was evidence of prior injuries to [S.W.].  However, the Defendant denies those injuries were the result of abuse.
   d.   The Defendant's delay in seeking medical treatment for [S.W.] after she arrived home from work was much more than neglect.  She purposely disregarded the health and welfare of her daughter knowing that [S.W.] was in peril and needed immediate medical attention.
   e.   By delaying seeking medical treatment and by lying to investigators and medical personnel, the Defendant was protecting her boyfriend and placing his penal interest ahead of the life of her child.

Appellant's App. pp. 112-13. The court imposed a thirty-five-year sentence upon LaVanway, and she now appeals.

# Discussion and Decision

## A. Sentencing Discretion

[14] LaVanway claims the trial court erred in the course of identifying aggravating circumstances. A trial court may impose any sentence that is authorized by statute and permissible under the Constitution of the State of Indiana. Ind. Code § 35-38-1-7.1(d) (2015). In general, sentencing decisions are left to the sound discretion of the trial court, and we review the trial court's decision only for an abuse of discretion. *Singh v. State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Winkleman v. State*, 22 N.E.3d 844, 852 (Ind. Ct. App. 2015), *trans. denied*.

[15] A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.*

[16] LaVanway argues the trial court inappropriately cited an element of the offense as an aggravating factor, specifically her neglect of S.W. The State asserts the court's sentence was based on the circumstances of the offense.

[17] Where a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense at issue, the sentence is erroneous absent something unique about the circumstances that would justify deviating from the advisory sentence. *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014). Nevertheless, a sentencing court may properly consider specific elements of the nature and circumstances of an offense to be an aggravating circumstance. *Id.* at 853.

[18] The trial court declined to cite S.W.'s age, the fact of her death, or LaVanway's "breach of trust" with S.W. to be aggravating factors, deeming them to be "elements of the crime." Tr. p. 85. Instead, the court noted:

> However, your lack of responsiveness to the needs of your child went way beyond what I believe is – was necessary to prove the commission of the crime, so going beyond what was necessary to prove the commission of the crime, even though it may have been an element of it, your lack of responsiveness for that long a period of time is a mit – is an aggravating factor I can consider.

*Id.* at 86. The court further identified LaVanway's lies to S.W.'s doctors and the police to be an aggravating factor, noting her lies could have hindered S.W.'s medical care. In addition, the court cited as an aggravating factor LaVanway's choice to prioritize protecting Weedling over her daughter's life.

[19] Based on this record, we conclude the trial court was well aware of its obligation to avoid citing elements of the offense as aggravating factors and instead focused on specific circumstances of the crime that went beyond what was necessary to prove the offense. The cited aggravating factors are appropriate, and the court did not abuse its sentencing discretion. *See Gomillia*, 13 N.E.3d at 853 (trial court appropriately considered factual circumstances of the crime as aggravating factors).

## B. Nature of Offense and Character of Offender

[20] LaVanway asks the Court to exercise its authority to reduce her sentence. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The principal purpose of this review is to leaven the outliers rather than to achieve a "correct" result in each case. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015).

[21] Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 972-73. The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Russell v. State*, 970 N.E.2d 156, 162 (Ind. Ct. App. 2012), *trans. denied*.

[22] At the time LaVanway committed her offense, a Level 1 felony was punishable by a maximum sentence of 40 years and a minimum sentence of 20 years, with an advisory sentence of 30 years. Ind. Code § 35-50-2-4 (2014). The trial court sentenced LaVanway to thirty-five years.

[23] Turning to the nature of the offense, LaVanway delayed seeking help for S.W. for over three hours. She did not contact the authorities after Weedling texted her to say he had beaten S.W. and would continue to beat her until LaVanway returned home, and she did not immediately seek help upon returning to the motel room and discovering S.W. unconscious and unresponsive, with blood on her face. Instead, she prioritized helping Weedling to avoid the consequences of his violent acts.

[24] When LaVanway finally took S.W. to the hospital, she repeatedly lied to medical staff and to Detective Mangus, frequently changing her story but always trying to minimize Weedling's role. In addition, the record reflects that S.W.'s body bore numerous marks from prior incidents of abuse, which LaVanway must have ignored. LaVanway was willing to risk her child's life to protect Weedling, which is reprehensible.

[25] As for the character of the offender, LaVanway points to her guilty plea, her lack of an adult criminal record, and her gainful employment as positive character traits. The evidence against her was strong, which negates any mitigating considerations from her plea. In addition, LaVanway admitted she frequently smoked marijuana, which indicates she has not lived a law-abiding

life. Finally, her employment record does not outweigh the tragic circumstances of this offense. She has failed to demonstrate that her sentence is inappropriate.

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

May, J., and Mathias, J., concur.