Dale **HIERLMEIER,** Appellant–
Plaintiff,

v.

**NORTH JUDSON–SAN PIERRE BOARD OF SCHOOL TRUSTEES,** Appellee–Defendant.

No. 75A03–9911–CV–406.

Court of Appeals of Indiana.

July 5, 2000.

Frank C. Capozza, Indianapolis, Indiana, Dale J. Starkes, Winamac, Indiana, Attorneys for Appellant.

Patrick Blankenship, Nichols Wallsmith & Weaver, Knox, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Dale Hierlmeier appeals the trial court's order affirming the decision of the North Judson–San Pierre Board of School Trustees ("School Board") to cancel Hierlmeier's teaching contract. Hierlmeier raises the following issues, which we restate as:

1) whether the School Board violated Ind.Code § 20–6.1–4–11(a)(A)(9) when it did not vote on whether to cancel Hierlmeier's teaching contract on the same day that his hearing was held;

2) whether a letter received by the School Board from the superintendent after Hierlmeier's hearing constituted improper additional ex parte evidence;

3) whether the School Board complied with Ind.Code § 20–6.1–4–11(a)(6)(A) in notifying Hierlmeier at his hearing of the reasons for the proposed cancellation of his contract; and

4) whether the School Board's decision to terminate Hierlmeier was supported by substantial evidence.

We affirm.

The relevant facts follow. Hierlmeier had been employed as permanent teacher by the North Judson–San Pierre School Corporation for approximately twenty-two years when, in December 1996, the school guidance director notified the principal that one of Hierlmeier's students had reported several incidents of alleged inappropriate behavior by Hierlmeier. On January 7, 1997, the principal sent a letter to Hierlmeier setting forth the student's complaints. Thereafter, Hierlmeier was notified that the School Board had proposed to cancel his contract. Following a hearing, the School Board cancelled Hierlmeier's teaching contract. On January 13, 1998, Hierlmeier filed a complaint in the trial court seeking reinstatement. The trial court held a hearing to review the School Board's proceedings and affirmed the School Board's decision to cancel Hierlmeier's contract, concluding that the School Board followed the proper procedures in canceling Hierlmeier's contract and that its decision to do so was supported by substantial evidence. Additional facts will be provided herein as necessary.

In reviewing a school board decision, we stand in the same position as does the trial court. *Hinkle v. Garrett–Keyser–Butler School Dist.*, 567 N.E.2d 1173, 1176 (Ind.Ct.App.1991), *trans. denied.* Thus, our review is limited to determining whether the board followed the proper procedures and whether there is substantial evidence to support the board's decision. *Id.* Under this standard of review we may not review the weight and effect of the evidence upon which the administrative decision is based. *Id.*

### I.

The first issue is whether the School Board violated Ind.Code § 20–6.1–4–11(a)(9) when it did not vote on whether to cancel Hierlmeier's teaching contract on the same day that his hearing was held.[1] That section of the statute provides in relevant part:

celing an indefinite teaching contract.

1. Indiana Code § 20–6.1–4–11 provides the procedures that must be followed when can-

"the governing body of the school corporation may cancel an indefinite contract with a teacher by a majority vote evidenced by a signed statement in the minutes of the board; the decision of the governing board is final.

The vote to cancel a contract described in subdivision (9) must be taken by the governing body on the date and at the time and place specified in subdivision (1)."

I.C. § 20–6.1–4–11(a)(9). Subdivision (1) provides as follows:

"the teacher shall be notified in writing of the date, time, and place for the consideration by the school corporation of the cancellation of the contract; this notification must occur not more than forty (40) days nor less than thirty (30) days before the consideration."

I.C. § 20–6.1–4–11(a)(1).

Hierlmeier argues that the vote on whether to cancel his contract should have been taken immediately following his hearing, which was held on March 11, 1997. He asserts that instead the vote was improperly taken on March 17, 1997.[2] In essence, Hierlmeier seems to assert that the "date of consideration" and hearing date must be the same date. The School Board contends that it could not make its decision until March 17, 1997, because that was the date that it had previously set for consideration of cancellation of Hierlmeier's contract and an earlier decision would have been in contravention of Ind.Code § 20–6.1–4–11.

The record does not contain the original notice setting the date, time, and place for the consideration. North Judson asserts that the date of consideration was March 17, 1997. Hierlmeier does not deny that nor contend that the date was any other date than March 17, 1997. Moreover, Hierlmeier does not contend that March 11, 1997, was the date set for consideration. Hierlmeier did not assert at the hearing, at the trial court, or here that March 17, 1997, was not the date set for consideration. He also never denied that he received the notice of consideration. Rather, Hierlmeier contends that the vote had to be taken at the hearing. That is not what the statute requires. *See* I.C. § 20–6.1–4–11(a)(9) & (1).

■ We further note that at the conclusion of his hearing, Hierlmeier did not request that the School Board vote at that time nor did he object when it adjourned the meeting until March 17, 1997. A teacher cannot predicate error on the delay to which he agreed. *Steinway v. Board of Sch. Trustees.*, 486 N.E.2d 1045, 1047 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* Therefore, implicit in his failure to object or request a vote is his agreement that March 17, 1997, was an acceptable date for the School Board to vote. *See id.* Consequently, he cannot now predicate error on a vote allegedly taken on March 17, 1997.[3] *See id.*

## II.

The next issue is whether a letter received by the School Board from the superintendent after Hierlmeier's hearing constituted improper additional ex parte evidence. Hierlmeier argues that, in deciding whether to terminate his employment, the School Board improperly considered a letter dated March 14, 1997, that was written by the school superintendent. Specifically, Hierlmeier contends that the

**2.** Although our review of the record reveals no evidence to confirm when the vote was taken, the School Board concedes that it was taken on March 17, 1997.

**3.** In passing, Hierlmeier seems to claim that the School Board improperly voted on whether to cancel his teaching contract during an executive session instead of during an open session. However, Hierlmeier makes no argument to support this vague contention. Accordingly, any contention that the School Board improperly voted during an executive session is waived. *See* App. R. 8.3(A)(7) ("Each error that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto").

letter constituted improper additional evidence received by the School Board ex parte after his hearing.

■ Indiana Code § 20–6.1–4–11(a)(7) provides as follows:

"a contract may not be canceled until:

(A) the date set for consideration of the cancellation of the contract;

(B) after a hearing is held, if a hearing is requested by the teacher; and

(C) *the superintendent has given his recommendations on the contract;* on five (5) days written notice to him by the school corporation, the superintendent shall present his recommendation on each contract, except on a superintendent's contract".

I.C. § 20–6.1–4–11(a)(7) (emphasis added). It is clear from a review of the letter at issue that it was written in response to a request made by the School Board on March 12, 1997, that the school superintendent set forth her recommendations regarding Hierlmeier's teaching contract. This letter from the superintendent is clearly required by Ind.Code § 20–6.1–11(a)(7) before a permanent or semi-permanent teacher's contract can be canceled. *See* I.C. § 20–6.1–11(a)(7); *Myers v. Greater Clark County Sch. Corp.,* 464 N.E.2d 1323, 1327 (Ind.Ct.App.1984). Due process would demand that the letter should not be written until after the teacher's hearing has occurred. Having a hearing before the superintendent makes her recommendation allows her to hear evidence presented at the hearing which better allows the superintendent to render a thoughtful and well reasoned recommendation. In addition, having the superintendent's recommendation given after the hearing acts to protect the due process rights of the teacher by ensuring that the teacher will have an opportunity to present evidence and arguments in his defense before the superintendent makes her recommendation.

Hierlmeier does not support his argument that the letter contains additional evidence by telling us specifically what evidence it contains that was not previously presented during the hearing. Our review of the letter indicates that it was based purely upon the information presented at the hearing. As such, it does not contain any additional evidence as asserted by Hierlmeier. The superintendent states in the letter that her recommendation is "based on the testimony that I heard at the hearing and the documentation provided by [the attorneys for Hierlmeier and the School Board]." Record, p. 506. We conclude that this letter was no more than the recommendation required pursuant to Ind.Code § 20–6.1–4–11(a)(7)(C). Therefore, the School Board could have properly considered it in making its final decision to cancel Hierlmeier's contract. *See* I.C. § 20–6.1–4–11(a)(7).

### III.

The next issue is whether the School Board complied with Ind.Code § 20–6.1–4–11(a)(6)(A) in notifying Hierlmeier at his hearing of the reasons for the proposed cancellation of his contract. Hierlmeier argues that he was not given a complete statement of the reasons for the termination of his contract. He argues that the School Board failed to comply with Ind. Code § 20–6.1–4–11(a)(6)(A), which provides in relevant part:

"at the hearing, the teacher is entitled:

(A) to a full statement of the reasons for the proposed cancellation of the contract."

I.C. § 20–6.1–4–11(a)(6)(A).

■ Hierlmeier asserts that the record of his hearing before the School Board was devoid of "a complete statement of the charges against him that would justify the termination of his employment contract." Appellant's brief, p. 13. However, during the hearing, the School Board's attorney outlined in his opening argument the reasons for canceling Hierlmeier's contract. The School Board's attorney covered Hierlmeier's alleged inappropriate con-

duct, which included Hierlmeier's presentation in front of the class of a "morbid[,] grotesque[,] and offensive" picture to one of his students; Hierlmeier's inappropriate comments to one of his female students; and his giving of gifts to students that were inappropriate due to the student-teacher relationship and the age difference between the student and the teacher. Record, p. 143. The School Board's counsel then stated that this inappropriate conduct violated school and corporate policies regarding sexual harassment and teachers' conduct toward students including the giving of gifts. The above evidence clearly shows that during his hearing Hierlmeier was given a full statement of the School Board's proposed reasons for canceling his contract. See I.C. § 20–6.1–4–11(a)(6)(A). Therefore, the School Board complied with the statute.[4] See id.

### IV.

 The final issue is whether the School Board's decision to terminate Hierlmeier was supported by substantial evidence. As we mentioned above, when reviewing whether there is substantial evidence to support the school board's decision, we may not review the weight and effect of the evidence upon which the administrative decision is based. Hinkle, 567 N.E.2d at 1176. This court may vacate a school board's decision only if the evidence, when viewed as a whole, demonstrates that the board's decision is clearly erroneous. Aigner v. Cass Sch. Township, 577 N.E.2d 983, 985 (Ind.Ct.App.1991), reh'g denied, trans. denied. Under Indiana law, the cancellation of a teacher's employment contract must be substantiated by evidence presented at a hearing. Whitney v. Board of School Trustees, 416 N.E.2d 1289, 1294 (Ind.Ct.App.1981). Requiring a school board to present at a hearing all of the evidence on which it bases its decision affords the teacher the opportunity to challenge the school board's findings and prevents the school board from judging the case before hearing all of the evidence. Id.

 Hierlmeier argues that the only evidence presented by the School Board that supports its decision constitutes hearsay. Specifically, he asserts that the testimony of school officials regarding what the students told them and the affidavits of students are inadmissible hearsay. However, hearsay is admissible in a school board hearing. Hinkle, 567 N.E.2d at 1178. The interest to be protected, that of avoiding the likelihood that students would have to testify on such matters in the presence of their peers or teachers, is compelling. Id. Nonetheless, the admis-

---

4. In addition, Hierlmeier contends that the two written statements provided to him before the hearing notifying him of the grounds for his dismissal were vague and inadequate and were not made part of the record at the hearing. One is a letter written directly to Hierlmeier from the superintendent and the other is a letter from the School Board's counsel to Hierlmeier's representative from the Indiana State Teacher's Association. He appears to point this out in support of his argument that the School Board did not properly follow Ind.Code § 20–6.1–4–11(a)(6)(A). However, Ind.Code § 20–6.1–4–11(a)(6)(A) deals only with what the teacher is entitled to "at the hearing." Id. (emphasis added). The content of the letters received by Hierlmeier before the hearing is irrelevant to what occurred during the hearing. See id.

Although not stated in his brief, Hierlmeier could be alluding to an argument that Ind. Code § 20–6.1–4–11(a)(2) was not met. That part of the statute provides that "the teacher shall be furnished, within five (5) days after a written request, a written statement of the reasons for the consideration." I.C. § 20–6.1–4–11(a)(2). However, Hierlmeier admits that this issue was not raised to the trial court, and he has not directed us to any place where this issue was raised at the hearing. In addition, he has not made an argument or supported it with authorities based upon Ind. Code § 20–6.1–4–11(a)(2). Therefore, Hierlmeier has waived this issue for our review. See National Rural Utilities Co-op. Finance Corp. v. Public Service Com'n of Indiana, 552 N.E.2d 23, 28 (Ind.1990) (holding that appellants were precluded from claiming entitlement to a statute's protections because they waived the issue by not raising it before the commission); See also Hale, 454 N.E.2d at 885 n. 1.

sion of hearsay evidence in such a proceeding is not without limitation. *Id.* If hearsay evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence. *Id.* There must be some corroborative evidence to support a school board's order when hearsay has been admitted over objection. *Id.* If not objected to, the hearsay evidence may form the basis for an order. *Id.*

■ In order to cancel a teacher's contract, the school board must demonstrate that the teacher's conduct falls within the reasons enumerated in Ind.Code § 20–6.1–4–10. In Hierlmeier's case, the School Board cancelled Hierlmeier's contract for good and just cause which is a permissible ground for doing so pursuant to Ind.Code § 20–6.1–4–10(7). Therefore, assuming that Hierlmeier properly objected to the affidavits of the students and the testimony by school officials as to what the students told them, we look to whether there was admissible evidence presented at the hearing to corroborate the School Board's findings that there was good and just cause to cancel Hierlmeier's contract.

■ The School Board made the following findings that were supported by Hierlmeier's own testimony, which was admissible evidence, when it concluded that Hierlmeier's contract should be canceled: that Hierlmeier gave C.R., one of his students, a cookie during class when no other students were given gifts; that during Hierlmeier's hunter education class a deer mounting was placed on C.R.'s desk with a sign on it that said " '[C.R.] – the friendly deer' "; that during the semester a student wrote " 'Dale + [C.R.]' " or " 'Dale loves [C.R.]' " on the blackboard and it remained there for one to two days; that during a conversation regarding C.R.'s jacket, Hierlmeier commented that it was not laying properly because she was " 'maturing' "; that Hierlmeier made several comments on one of C.R.'s quizzes which were not related to her score; that Hierlmeier gave C.R. a $32.00 container of perfume as a gift right before Christmas break that he wrapped in several boxes and she chose to open in front of the class;[5] that C.R. later gave the gift to a guidance counselor;[6] that C.R. was teased in relation to some of the incidents described above; that Hierlmeier presented another one of his students, L.M., with a copy of a photograph of an extremely obese woman in a swim suit whereon he wrote,

> " '[L.M.] – back in 1996, [L.M.] was slim, trim, and unbelievably cute; however, after eating tons of sugar-covered apples for her entire life, [L.M.] has ballooned up to an amazing 2,006 pounds, ironicly [sic] in the year 2006. Space age medicines, modern scientific diet plans, and even [L.M.'s] high tech health teacher – Coach Herli—Bird – back in 96 could not influence [L.M.'s] craving for "sugar and apples". Please remember this dramatic representation whenever you get the craving for something sweet' ";

and that Hierlmeier asked another one of his students, D.S., for permission to sign her yearbook and he used an entire page to sign it.[7] Record, pp. 508–510.

Hierlmeier acknowledged during his testimony that he may have embarrassed

---

**5.** On the same day, Hierlmeier gave the other students in the class a chocolate éclair. Hierlmeier testified that he gave C.R. the cologne as a thank you for her taking attendance during the year. He also testified that as a health teacher he did not want to give her candy or cookies. Hierlmeier admitted that although other students had taken attendance for him, he had never given any other student perfume for doing so in the past.

**6.** This finding is supported by the school guidance director's testimony.

**7.** Exhibit A, D.S.'s yearbook, which the School Board relied upon in making its decision, revealed that in the yearbook Hierlmeier referred to D.S. as "Party Girl," "[D.S.] Weener," and "[D.S.] the Deer." Record, p. 454. "[D.S.] the Deer," similar to "[C.R.] the Friendly Deer," was the name Hierlmeier gave D.S. from his hunter safety class.

C.R. on at least one occasion and that it was possible that other students might have teased C.R. about the events in question. One of C.R.'s friends, K.P., testified that C.R. was teased in the hallways by other students in a way that was not flattering regarding the deer head and perfume incidents. Hierlmeier also admitted that a teenager might be offended by the photo of the obese woman. During course of Hierlmeier's employment, he was warned on more than one occasion that he should not act in an inappropriate manner toward students.[8] The above testimony by Hierlmeier that he committed the acts in question is nonhearsay evidence to support the School Board's findings.

Based upon the above evidence the School Board concluded that Hierlmeier violated the School Board's policy regarding sexual harassment by creating a hostile learning environment for C.R. and L.M. It also concluded that Hierlmeier's conduct in regard to D.S.'s yearbook and with regard to C.R. were both inappropriate. In addition, the School Board concluded that Hierlmeier violated its policy on gifts to students.[9] The School Board determined that its findings and conclusions constituted good and just cause to terminate Hierlmeier's indefinite teaching contract.[10]

We conclude that the above evidence, viewed as a whole, shows good and just cause for the cancellation of Hierlmeier's contract. See I.C. § 20–6.1–4–10; See e.g., Aigner, 577 N.E.2d at 985. Therefore, the School Board's decision survives the substantial evidence test. See Aigner, 577

N.E.2d at 985. The School Board's decision is not clearly erroneous. See id.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

BAILEY, J. concurs.

ROBB, J. concurs in result.

---

**8.** In 1985, Hierlmeier was warned that it was unacceptable for him to wear "short-shorts" in a manner where he "sat before the class and embarrassed pupils" and to use "suggestive language in class, particularly language that was offensive to female students." Record, p. 427.

**9.** Hierlmeier argues that he was unaware of any policy prohibiting gifts from teachers to students. We need not address this alleged error because there is substantial evidence to support the School Board's cancellation of

Hierlmeier's contract without considering whether he violated any policy prohibiting gifts from teachers to students.

**10.** Hierlmeier argues that there was no substantial admissible evidence that his students ever claimed that they had been sexually harassed or that his conduct created a hostile learning environment. We need not address this issue because there is sufficient evidence of inappropriate conduct by Hierlmeier that justified the School Board's cancellation of his contract for good and just cause.