# FOR PUBLICATION

**FILED**
Jun 27 2013, 7:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**KEVIN W. BETZ**
**JAMIE A. MADDOX**
**COURTNEY E. CAMPBELL**
Betz & Blevins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES L. WHITLATCH**
**HOLLY M. HARVEY**
Bunger & Robertson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHEN G. SMITH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1211-MI-511 |
| | ) | |
| BOARD OF SCHOOL TRUSTEES OF THE | ) | |
| MONROE COUNTY COMMUNITY | ) | |
| SCHOOL CORPORATION, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Elizabeth A. Cure, Judge
Cause No. 53C04-1110-MI-2190

**June 27, 2013**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

Stephen G. Smith appeals the trial court's order affirming the decision of the Board of School Trustees of the Monroe County Community School Corporation ("Board") to terminate Smith's teaching contract. We affirm.

ISSUES

We consolidate and restate the issues as:

I.      Whether there was substantial evidence to support the Board's decision to terminate Smith's contract.

II.     Whether the Board followed proper procedures in terminating Smith's contract.

FACTS AND PROCEDURAL HISTORY

Smith had been employed as a teacher by the Monroe County Community School Corporation ("MCCSC") for approximately twenty years. During the 2010-2011 school year, Smith taught in the social studies department at Bloomington High School South and coached the freshman boys' baseball team. On April 14, 2011, Smith suffered a severe injury when he was hit in the head by a baseball. Although Smith had suffered a potentially life-threatening injury, he returned to work on April 25, 2011. Not long after his return to work, Smith was present at a social studies department meeting on May 11, 2011. At the meeting, Smith interrupted several times in a loud, threatening manner with obscenity-laced comments. Smith's comments and behavior were reported to administrators by at least one of the teachers that had been present at the meeting, and several administrators, including Peggy Chambers, the assistant superintendent for

2

human resources and personnel, met with Smith the following day. At the conclusion of this meeting, administrators put Smith on administrative leave with pay and with certain restrictions. Following the meeting, Smith received a letter from Chambers confirming his administrative leave and outlining the specific restrictions. The letter indicated that Smith must attend counseling sessions, that he was suspended from MCCSC property and campuses, that he was prohibited from attending any MCCSC sponsored activity or event, and that his employment status would be re-evaluated by July 15, 2011. The letter also stated that any violation of these directives would result in further disciplinary action, including termination.

On the day of Smith's meeting with administrators and the commencement of his administrative leave, he went to a local park where the freshman boys' baseball game was being held and dropped off equipment for the game. After doing so, Smith called Chambers to tell her of his actions. During the call, Chambers reminded Smith that he was not to be on school grounds or at a school activity or event. Chambers did not make a recommendation for Smith's termination at that time.

Due to the scheduling of an evaluation of Smith, his administrative leave was extended beyond July 15, 2011. On July 11, 2011, Chambers sent Smith a letter notifying him that his administrative leave was being extended to August 10, 2011. Although the letter stated that Smith's administrative leave was being extended, it was silent as to the restrictions that had been placed upon him when he was originally placed on leave in May. However, Chambers informed Smith in a phone conversation that

3

the restrictions of his leave, including the prohibition from school property, were also extended.

On July 26, 2011, Smith went to Childs Elementary, a school in MCCSC, to return a key to Joani Lentz, a Childs Elementary staff member. Upon entering the school, Smith spoke to Kendall Knight, a school custodian, and to Chris Finley, the school principal. Smith inquired whether he was allowed to be on school property, and Finley responded that he was not. Smith left the building without incident, and Finley reported this occurrence to administrators, who then commenced the process of cancelling Smith's teaching contract. Following the conference at which both sides presented witnesses and evidence, the Board voted to terminate Smith's contract. Smith appealed the Board's decision to the trial court, and the trial court affirmed the Board's decision, concluding that the Board followed proper procedures in terminating Smith's contract and that its decision to do so was supported by substantial evidence. Smith now appeals.

## DISCUSSION AND DECISION

### I. SUBSTANTIAL EVIDENCE

The first issue is whether the Board's decision to cancel Smith's contract was supported by substantial evidence. In reviewing a school board's decision, we stand in the same position as the trial court; that is, our review is limited to determining whether the board followed the proper procedures and whether there is substantial evidence to support the board's decision. *Hierlmeier v. N. Judson-San Pierre Bd. of Sch. Trs.*, 730 N.E.2d 821, 823 (Ind. Ct. App. 2000). Under this standard, we may not review the

4

weight and effect of the evidence upon which the administrative decision is based. *Id.* We may vacate a school board's decision only if the evidence, when viewed as a whole, demonstrates that the board's decision is clearly erroneous. *Id.* at 826.

In order to cancel a teacher's contract, a school board must demonstrate that the teacher's conduct falls within the grounds enumerated in Indiana Code section 20-28-7.5-1(e) (2011).[1] In the instant case, the Board cancelled Smith's teaching contract for insubordination, neglect of duty, and other good or just cause pursuant to Indiana Code section 20-28-7.5-1(e)(2), (5) and (7).

Indiana Code section 20-28-7.5-1(e)(2) defines insubordination as "a willful refusal to obey the state school laws or reasonable rules adopted for the governance of the school building or the school corporation." Rules adopted for the governance of the school building or the school corporation can include an unambiguous order of the school principal. *See Werblo v. Bd. of Sch. Trs. of Hamilton Heights Sch. Corp.*, 519 N.E.2d 185, 191 (Ind. Ct. App. 1988), *vacated in part by Werblo v. Bd. of Sch. Trs. of Hamilton Heights Sch. Corp.*, 537 N.E.2d 499 (Ind. 1989). They can also include an order given to the teacher by a school trustee. *See Stiver v. State ex rel. Kent*, 211 Ind. 370, 1 N.E.2d 592, 594 (1936). However, before a teacher can be terminated for violating a school

---

[1] Indiana Code sections 20-28-7.5-1 to -8 are a recodification of Indiana Code sections 20-28-7-1 to -15 (2005). On July 1, 2011, Indiana Code sections 20-28-7-1 to -15 were repealed and Indiana Code sections 20-28-7.5-1 to -8 took effect. Both parties, the Board, and the trial court followed the procedures and rules set forth in Indiana Code sections 20-28-7.5-1 to -8 with regard to the issues in this case. In reviewing the case, we note that the act triggering the commencement of these cancellation proceedings occurred on July 26, 2011; thus, Indiana Code sections 20-28-7.5-1 to -8 were the statutory scheme in effect at the time and are the statutes governing the issues in this case.

corporation's rule, the evidence must establish that the rule was unambiguous and reasonable. *Werblo*, 519 N.E.2d at 191.

Smith first argues that there was no rule in place when he went onto the property of Childs Elementary School on July 26, 2011. In the alternative, he claims a rule existed, but it was ambiguous and unreasonable.

The rule pertinent here is the prohibition of Smith from going on any MCCSC property. This rule was put into place following a May 11, 2011 social studies department meeting during which Smith was very agitated and boisterous and made numerous obscenity-laced remarks. A fellow social studies teacher testified to the Board that at one point in the meeting, referring to his class schedule, Smith asked, "Who do I have to kill to get this changed?" Appellant's Corrected App., Vol. I, p. 113 (Tr. p. 32). At the conference before the Board, Smith denied making this statement. The teacher reported in a written statement, "[Smith's] blow-up in the department meeting far exceeded anything I have witnessed in any employment situation. I do not know if his threat of violence was real or simple venting, but it far exceeded behavior I expect from my co-workers and teachers." Ex. 9, Appellant's Corrected App., Vol. II, p. 374. The same teacher also reported that upon Smith's return to work following his head injury, he had on several different occasions made disparaging remarks about his students and the administration. *Id.* The evidence of Smith's behavior at school following his head injury supports a finding that the rule prohibiting him from MCCSC property was reasonable

for the protection of the students and staff of Bloomington High School South, as well as the entire MCCSC.

The rule was adopted by MCCSC and was issued to Smith in person on May 12, 2011 by the interim superintendent, the school principal, and Chambers. The rule was also put into writing to Smith by Chambers. Smith concedes that this rule was in place from May 12, 2011 to July 11, 2011.

On July 11, 2011, Chambers sent Smith a letter indicating that MCCSC was extending his administrative leave until August 10, 2011 due to the scheduling of his evaluation. The letter was silent as to the restrictions that had been placed upon Smith at the commencement of his leave in May. However, Chambers testified unequivocally at the conference before the Board that on July 11, 2011, she had a phone conversation with Smith in which she informed him that a letter extending his administrative leave had been sent to him and that his prohibition from school property remained in effect during the extension of his administrative leave. Conversely, Smith testified at the conference that there was no discussion of the continuation of his prohibition from school property during his July 2011 conversation with Chambers.

Although Smith's testimony contradicts that of Chambers, we are not to reweigh the evidence. *See Hierlmeier*, 730 N.E.2d at 823. Chambers' testimony establishes that Smith was told explicitly on July 11, 2011 that his prohibition from MCCSC property was to remain in effect during the extension of his administrative leave. Thus, the

7

evidence supports a finding that an unambiguous rule existed prohibiting Smith from being on MCCSC property on July 26, 2011.

Next, Smith contends that he did not willfully disobey the rule when he entered onto the MCCSC property of Childs Elementary on July 26, 2011. Rather, he asserts that he was confused and polite during his encounter with Finley. At the conference, on cross examination regarding Smith's confusion, Finley testified:

> COUNSEL: So it was clear to you that he was confused about whether he was prohibited from MCCSC property or not, right?
>
> FINLEY: That's not necessarily correct.

Appellant's Corrected App., Vol. I, p. 129 (Tr. p. 96). In addition, Finley testified that Smith asked him not to report his presence in the building of Childs Elementary. Moreover, Smith's contention of confusion is directly refuted by Chambers' testimony to the Board that she had a phone conversation with him on July 11, 2011, wherein she specifically informed him of his continuing prohibition from MCCSC property. Additionally, whether Smith was polite is of no moment; the standard is whether there was a willful refusal to obey the rule. Smith's argument is another request for us to reweigh the evidence. We are unable to accommodate this request. In light of the evidence at the conference, we cannot say that the Board's conclusion that Smith willfully disobeyed the rule prohibiting him from MCCSC property is clearly erroneous.

8

Thus, there was substantial evidence showing a reasonable and unambiguous rule prohibiting Smith from MCCSC property. Further, Smith did not obey this rule, and there was substantial evidence to support a conclusion that his disobedience was willful.

Smith also asserts that MCCSC failed to show a neglect of duty, or good and just cause. A teacher's contract may be canceled for any of the reasons enumerated in Indiana Code section 20-28-7.5-1(e). In this case, MCCSC provided substantial evidence of insubordination. Therefore, we need not address the remaining alleged reasons.

## II. PROPER PROCEDURE

### A. Notice

Smith alleges that his due process rights were violated because the notice given to him by MCCSC as required by Indiana Code section 20-28-7.5-2(a)(2) (2011) was insufficient in that it failed to provide him "with sufficient notice of all the reasons and at least a summary of facts MCCSC planned to present" in support of its termination of his contract. Appellant's Br. p. 23.

The statutory scheme set forth in Indiana Code sections 20-28-7.5-1 to -8 confers on permanent teachers a property interest in their jobs. *See Bd. of Sch. Comm'rs of Indianapolis v. Walpole*, 801 N.E.2d 622, 625 (Ind. 2004). Because teachers have this property right, termination of their employment must comport with due process requirements. *Id.* Accordingly, the statutes provide notice and hearing requirements before a school board may deprive a teacher of his or her right to employment. *Id.*; *see* Ind. Code §§ 20-28-7.5-1 to -8. In this context, due process requires only that the teacher

9

be given notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. *Walpole*, 801 N.E.2d at 625.

Indiana Code section 20-28-7.5-2(a)(2) provides: "The notice in subdivision (1) must include a written statement, subject to IC 5-14-3-4, giving the reasons for the preliminary decision." The notice sent to Smith by the principal of Bloomington High School South contained the following:

> In May of 2011, you were upset with your teaching schedule for the 2011-2012 school year. There were incidents of inappropriate aggression and unprofessional behavior. This behavior lead to a conference on May 17, 2011 with Interim Superintendent Dr. Timothy Hyland and Ms. Peggy Chambers, the Assistant Superintendent of Human Resources and Personnel. I was also present at that conference.
>
> Because of your behavior, you were informed the following measures were being implemented:
>
> - You were placed on Administrative Leave with pay, effective May 12, 2011.
>
> - You must attend mandated counseling sessions through LifeServices Employee Assistance Program and comply with recommendations set forth by the counselor.
>
> - You are suspended from MCCSC school property/campuses and are prohibited from attending any MCCSC sponsored activities or events.
>
> - Your employment status will be re-evaluated by July 15, 2011.
>
> As a follow-up to that meeting, Ms. Peggy Chambers informed you in writing of those implemented measures and further informed you in writing as follows:

> Any violation of the aforementioned directives will result in discipline action, up to and including termination.

> You subsequently were scheduled for a fitness for duty examination and your administrative leave was extended.

> On July 26, 2011, you violated the directive that you were suspended from MCCSC school property/campuses. This violation caused others to be upset and fearful of your presence inside Child's [sic] Elementary School.

> When confronted by Mr. Chris Finley at Child's [sic] Elementary School you requested that Mr. Chris Finley be dishonest and not tell anyone about your violation of the written directive provided you because you did not want to be fired.

> The factual summary set out above constitutes the following statutory grounds for my preliminary determination that your contract with the School Corporation as a teacher should be cancelled:
> 1.    Neglect of duty;
> 2.    Other good and just cause;
> 3.    Insubordination.

Appellant's Corrected App., Vol. II, pp. 357-58. Contrary to Smith's assertions, this notice fulfills the requirement of Indiana Code section 20-28-7.5-2(a)(2) by amply stating the reasons for the preliminary decision to terminate his contract. In addition, the summary of facts contained in the notice is sufficient to have put Smith on notice of the facts MCCSC planned to present at the conference before the Board. We find no due process violation with regard to the notice provided to Smith.

## B. Disclosure of Witness

Smith argues that MCCSC's failure to disclose a witness prior to the conference violated his due process rights. Again, in the context of teacher employment, due process

11

requires only that the teacher be given notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Walpole*, 801 N.E.2d at 625.

Indiana Code section 20-28-7.5-2(g)(1) provides:

At the private conference the governing body shall do the following:

(1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.

MCCSC failed to list Kendall Knight on its witness list pursuant to Indiana Code section 20-28-7.5-2(g)(1). Knight was called by MCCSC as a rebuttal witness. Although Smith objected generally to MCCSC's use of rebuttal witnesses, Smith did not object to Knight's testimony on the ground that Knight was not listed on MCCSC's witness list. A party may not object based upon one ground at trial and argue a different basis on appeal. *Francies v. Francies*, 759 N.E.2d 1106, 1113 (Ind. Ct. App. 2001), *trans. denied*. This issue is waived.

Waiver notwithstanding, MCCSC's use of Knight's testimony did not violate Smith's due process rights. Knight's testimony was cumulative of the testimony of Finley who also encountered Smith at Childs Elementary on July 26, 2011. Generally, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights. *In re Paternity of H.R.M.*, 864 N.E.2d 442, 450-51 (Ind. Ct. App. 2007). Therefore, absent

12

waiver, Smith's argument on this issue would fail because admission of Knight's testimony on rebuttal was harmless error.

Furthermore, much of Smith's argument addresses discrepancies in the testimony of himself, Finley, and Knight, with regard to who talked to whom first and whether Smith was hostile upon his visit to Childs Elementary on July 26, 2011. The resolution of these discrepancies has little or no bearing on whether Smith willfully refused to obey the rule. In addition, we are forbidden from weighing the evidence. *See Hierlmeier*, 730 N.E.2d at 823. We find no due process violation.

### C. Improper Evidence

Smith further contends that his due process rights were violated by MCCSC's presentation of prejudicial and hearsay evidence.

### 1. Smith's Relationship with Lentz

The first item Smith mentions is references to his relationship with Lentz. In his testimony at the conference, for example, Finley was asked if he had a conversation with the high school principal regarding Smith. Finley responded: "Basically, he said that [Smith] was not allowed in the buildings. And I think [the high school principal] must have known about his relationship with [Lentz] and assumed that he may be, at some point, you know, in Childs [Elementary]." Appellant's Corrected App., Vol. I, p. 126 (Tr. p. 83). Smith asserts that this evidence was improperly admitted because it is irrelevant and prejudicial and bears no rational relation to the reason for his termination.

13

Smith did not object to this evidence as irrelevant or prejudicial; rather, he objected to it on other grounds. Therefore, the issue is waived. *See Francies*, 759 N.E.2d at 1113 (stating that party cannot object on one ground at trial and raise different ground on appeal). Waiver notwithstanding, Smith's involvement with Lentz was only mentioned in order to give context to the circumstances that led to Smith being present at Childs Elementary on July 26, 2011. Furthermore, Smith discussed the relationship in more detail in his testimony at the conference. We find no error.

We note that Smith had the opportunity to object to evidence and availed himself of this opportunity frequently throughout the conference. In fact, Smith objected to this evidence as hearsay. Because we address hearsay evidence separately later in this opinion, we will revisit this evidence there.

### 2. Testimony of Co-Worker

Smith maintains that his co-worker's testimony of his threat at the department meeting and his disparaging remarks about his students and the administration was irrelevant and prejudicial testimony that should not have been allowed. Although Smith objected to his co-worker's testimony on these bases at the hearing, the objection was overruled.

The co-worker's testimony was clearly relevant to the issue before the Board. Before it could show that Smith had willfully disobeyed a rule, MCCSC was required to show that a rule existed and that it was unambiguous and reasonable; a task which necessitated background information. The evidence Smith complains of here provided

14

the necessary background information as to why he was placed on leave with the rule that he was prohibited from MCCSC property. The evidence at the hearing showed the rule was put in place as a direct result of Smith's behavior at school and, more specifically, at the department meeting. The co-worker was present at the department meeting and gave testimony as to Smith's behavior at the meeting. We find no error.

### 3. Hearsay Testimony

Next, Smith claims that the hearsay testimony regarding Lentz's reaction to Smith's presence at Childs Elementary on July 26, 2011 was inadmissible and should not have been allowed. At the conference, Finley testified that upon Smith's exit from the property of Childs Elementary, Lentz told him that she was scared and nervous when Smith was around and that Smith had not been making good choices.

Hearsay is admissible in a school board hearing. *Hierlmeier*, 730 N.E.2d at 826. However, the admission of hearsay evidence in such a proceeding is not without limitation. *Id.* at 826-27. If hearsay evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence. *Id.* at 827. There must be some corroborative evidence to support a school board's order when hearsay has been admitted over objection. *Id.* If not objected to, the hearsay evidence may form the basis for an order. *Id.*

Here, Finley's testimony was objected to by Smith's counsel on the basis of hearsay, but the objection was overruled. However, the evidence falls into at least one of

the categories of recognized exceptions to the hearsay rule. Finley described Lentz as "visibly shaken" and "crying" at the time she made these comments to him. Appellant's Corrected App., Vol. I, p. 128 (Tr. p. 89). Therefore, these statements by Lentz can be categorized as an excited utterance. Pursuant to Indiana Evidence Rule 803(2), a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused the by the event or condition is an excited utterance. Therefore, we find no error.

The testimony of Finley that we discussed in subsection 1, above, regarding what he was told by the high school principal about Lentz and Smith is also hearsay testimony to which Smith objected at the conference. However, this evidence does not appear to fit within a recognized exception to the hearsay rule. Thus, we must look to see if the Board's decision is based solely on this hearsay evidence.

The non-hearsay evidence before the Board showed that a reasonable and unambiguous rule prohibiting Smith from all MCCSC property was put in place on May 12, 2011 following Smith's exhibition of hostility toward his students and the administration. This rule was continued by extension on July 11, 2011 when Chambers personally spoke with Smith by telephone and told him of the extension of the rule. The evidence further showed that Smith willfully violated this rule when he went onto the property of Childs Elementary on July 26, 2011, and asked Finley not to report the incident. The Board's decision was not based solely on the hearsay evidence. We find no error.

16

### 4. Board's Counsel as Hearing Officer

Finally, Smith alleges that his right to a fair opportunity to be heard, as required by due process, was violated because the Board's attorney, James Whitlatch, served as facilitator at the conference. We disagree.

In *Vukadinovich v. Board of School Trustees of Michigan City Area Schools*, 978 F.2d 403 (7th Cir. 1992), Vukadinovich, a teacher, alleged that his due process rights were violated by the Board's attorney presiding over his hearing. The Seventh Circuit Court of Appeals determined that Vukadinovich failed to overcome "the presumption of honesty and integrity" attributed to those who serve as adjudicators. *Id.* at 411-12. The court noted that Vukadinovich alleged that the Board's attorney was biased merely because she was the Board's attorney and was presiding over the hearing and making rulings on the admissibility of evidence. The court also noted that Vukadinovich did not object to the Board's attorney presiding over the hearing and that the Board's attorney did not function as a prosecutor and did not participate in the Board's deliberations.

We have a similar situation here. Whitlatch presided without objection from Smith, and Smith does not assert, nor do we find, that Whitlatch functioned as a prosecutor or participated in the Board's deliberations. In short, Smith complains that the conference was not conducted in good faith merely because Whitlatch, the Board's attorney, presided over the conference. The Supreme Court has determined that performing dual roles in an adjudicative setting does not, without more, violate due process. *Id.* at 412 (citing *Withrow v. Larkin*, 421 U.S. 35, 54-58, 95 S. Ct. 1456, 43 L.

17

Ed. 2d 712 (1975)).   Here, Smith fails even to show that Whitlatch engaged in the performance of dual roles at the conference; rather, he simply complains that Whitlatch was the Board's attorney and therefore could not possibly have presided fairly over the hearing.  Thus, we reject Smith's claim.

## CONCLUSION

For the reasons stated, we conclude that there is substantial evidence to support the Board's decision and that the Board followed proper procedures in cancelling Smith's contract.

Affirmed.

BAKER, J., and RILEY, J., concur.